**Isabelita MAS, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 91–1132 (HL).**

United States District Court,
D. Puerto Rico.

Feb. 12, 1992.

Eliezer Aldarondo and Miguel A. Pagán, Aldarondo Lopez Bras, Pagán & Ortíz Ballester, Hato Rey, P.R., for plaintiff.

Fidel Sevillano, Asst. U.S. Atty., Hato Rey, P.R., for U.S.

OPINION AND ORDER

GENE CARTER, Chief Judge.[1]

I. *General*

This is an action for money damages filed under the Federal Tort Claims Act, 28

**1.** District of Maine, sitting by designation in the District of Puerto Rico.

U.S.C. § 2671 *et seq.* A trial was held at Hato Rey on February 6, 1992. The Court now renders its findings of fact and conclusions of law and enters judgment in the case.

## II. *The Legal Theories of the Parties*

This action is brought to recover for damages for physical injuries sustained by Plaintiff Isabelita Mas on June 8, 1988, when she slipped and fell to the floor while on the premises of the Fort Buchanan Commissary Store, operated by the United States Army in Cataño, Puerto Rico at approximately 12:30 p.m. After falling, she observed spilled milk on the floor in the area where she fell. Plaintiff's legal theory is that the spilled milk on the floor constituted a hazardous condition in a premises open for use by the public and that Defendants negligently or willfully permitted the spilled milk to remain on the floor when Defendant's agents, servants, or employees knew or, in the exercise of ordinary care, should have known of the existence of the condition. Pretrial Order at 3. Plaintiff specifically states: "The condition of the floor had continued for a period of time [such] that it would [sic] [should] have been noticed and removed if Defendant, its agents, servants, and employees had exercised ordinary care in the maintenance of the premises." *Id.*

Following trial, Defendant argues vigorously [2] that there could have been no negligence on the part of Defendant with respect to the spilled milk because Plaintiff, who bears the burden of proof herein, has failed to establish that Defendant either had actual notice of the spilled milk at the location in question or, by the exercise of reasonable care, should have known of the spilled milk. Defendant contends that absent either actual or constructive knowledge of the existence of the hazard created by the spilled milk, and a reasonable time within which, by the exercise of ordinary care, to remove the hazardous condition, there is no negligence on the part of Defendant established by Plaintiff's evidence.

## III. *Findings of Fact*

The Court finds that Plaintiff was upon the premises of the commissary operated by the United States Army at the location in question on June 8, 1988. She had gone there for the purpose of making certain purchases and her status upon the premises was that of a business invitee. She had been on the premises for a few minutes prior to 12:30, the time when she fell. Upon entry to the premises, she had picked up a small shopping basket and made several selections of merchandise for purchase. She had initially approached the express lane check-out and had then realized that she had forgotten some selections. She asked the person ahead of her in line to reserve her place in line while she went to the location in the store where the products were to be found.

She located the other articles and, as she returned to the express check-out lane, she was holding a can of peaches in one hand, a can of pears in the other hand, and two boxes of cookies pressed against her breast. She reapproached the place where she had originally stood in line. As she did so, she fell, sustaining significant injuries. She stated, "I was walking normally and I slipped and fell."

One of the male bystanders noted aloud that there was spilled milk on the floor in the immediate area of Plaintiff's fall. She had not observed the milk prior to falling, but did see it afterward.[3] One of the men who witnessed the fall asked for an employee to come and assist the Defendant, who was in extreme pain and who could not rise by herself from the floor. Plaintiff stated that a female employee came to the scene shortly after she had fallen. The person proved to be Ms. Aris Toledo. This employee sought to assist Plaintiff, interviewed her about the circumstances of the accident, and filled out an Accident Report. The Report was admitted in evidence at

---

2. Following the conclusion of all of the evidence, Defendant made a Fed.Rules Civ.Proc. Rule 52(c) Motion for Judgment as a Matter of Law. The Court heard counsel briefly on the record and declined to decide the motion.

3. She stated in her testimony at trial that if she had seen the milk prior to falling, she would not have fallen.

trial as Plaintiff's Exhibit 3. The Report notes that Plaintiff fell in front of a freezer next to the express lane while shopping, sustaining certain specified injuries. Exhibit 3 contains an entry, "Remarks Made by Injured Person: Small amount of spilled milk in the area where the accident occur [sic]."

Plaintiff testified at trial that Ms. Toledo said in the course of her discussions with Plaintiff that "the milk has been there for some time and they have not come to clean it up." Ms. Toledo did not make any notation in the accident report to that effect. In her testimony at trial, she stated that she made no such statement to Plaintiff at the scene. She further stated that she had no recollection of having known prior to the time of Plaintiff's fall that the milk was on the floor.

Plaintiff received some assistance in the immediate area of her fall, and subsequently her husband came to the scene and took her home. The next day she sought medical intervention.

### IV. *Liability*

This case is brought under the Federal Tort Claims Act, which provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674 (1982). In order to establish the Government's liability in tort under this section, Plaintiff must show that a private individual would be liable under state law for similar conduct under similar circumstances. *Platts v. United States,* 658 F.Supp. 850, 853 (D.Me.1987) (citing *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963)).

### V. *Conclusions of Law*

Under Puerto Rican law, claims for damages arising under theories of premises liability due to conditions or defects creating unreasonably dangerous conditions on

premises resulting in damage to a business invitee draw their substance from section 1802 of the Puerto Rican Civil Code [4] which provides that any person who by an act or omission causes damage to another, when there is fault or negligence, shall be obliged to repair the damage so done. *Gutiérrez v. Bahr,* 78 P.R.R. 450, 452 (Belaval, 1955).

This body of law has recently been clearly articulated by the Puerto Rican Supreme Court as follows:

Undoubtedly a person or company that runs a business for profit, which in its commercial transactions deals directly with the public, must make all possible safety measures to ensure that its clients will suffer no harm; in other words, the owner of a business is the one who must see that the areas open to the public are safe ... [omitting citations]. [T]he owner of the business 'is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection' and ... the visitor must prove that the owner of the business has not taken 'proper care ... to make the premises safe for him.' In the above-cited cases we fixed liability because they involved *existing dangerous conditions* within the business premises in question, which conditions were *known to the owners or should have been known to them.*

It is a well-known fact that, as a rule, the plaintiff who brings an action for damages alleging to have suffered injuries as a result of defendant's negligence has the burden of proving the alleged negligence ... [omitting citations]. In simpler terms what this means is that plaintiff must place the court in a position to make a clear and specific determination on negligence by presenting evidence to that effect.

An analysis of our case law touching on the specific situation of *claims for falls* reveals that as an essential part of

---

**4.** That provision, P.R. LAWS ANN. tit. 31, § 5141 (1990), reads as follows:

A person who by an act or omission causes damage to another through fault or negli-

gence shall be obliged to repair the damage so done. Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity.

the cause of action brought we have required plaintiffs to prove the dangerous condition that caused the fall ... [omitting citations].

*Cotto v. Consolidated Mutual Insurance Co.*, 116 D.P.R. 644, 650–51 (Rebollo Lopez, 1985) (emphasis in original; omitting footnotes). The Court in the *Cotto* case, a case arising out of a fall by a business invitee, held:

> In the present case—as we can conclude from the events set forth—the trial court had no evidence from where it could even infer that a dangerous condition existed on the premises in question; *and thus even less evidence that defendants could have known about it.*

*Id.* at 652 (emphasis added.) It is clearly implicit in this statement of law that the burden of the plaintiff encompasses the need to establish actual knowledge of the dangerous condition of the premises or constructive knowledge thereof—that is, that a reasonably prudent person under the circumstances of the case would have discovered the defect before the injury occurred. The reason for this requirement is that, in order to establish liability based upon fault or negligence, the landlord must have a reasonable opportunity to observe and to correct, or to warn against, the hazardous condition and he must fail or omit to do so. It is the failure to correct, in the exercise of due care, a known hazardous condition or one of which the landlord, in the exercise of due care, should be aware, or the failure to effectively warn invitees of its presence, that constitutes fault or negligence. Section 1802 specifically requires "fault or negligence" in order for liability to be imposed. *Supra*, at 947 n. 4. This requirement has been clearly articulated by the Puerto Rican Court in a case arising from a fall by a business invitee:

> [The plaintiff] was of course an 'invitee' of the hotel. 'The possessor is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection. There is no liability for harm resulting from dangerous conditions of which he does not know, and which a reasonable inspection would not have dis-

covered, *or from conditions from which no unreasonable risk was to be anticipated.* Likewise, in the usual case, there is no obligation to protect the visitor against dangers which are known to him, *or which are so apparent that he may reasonably be expected to discover them and be able to protect himself* ... The visitor is entitled, however, to assume that proper care has been exercised to make the premises safe for him, and he is not required, as in the case of a licensee, to be on the alert for possible defects.' (citing *Prosser on Torts* § 79 p. 642; *id.*, 2d ed., § 78, p. 459).

*Goose v. Hilton Hotels International, Inc.*, 79 P.R.R. 494, 498 (Snyder, 1956) (emphasis in original).

As the Court has indicated in its Findings of Fact, the Court is satisfied that Plaintiff has carried the burden of proof by a preponderance of the evidence to establish that she fell down on the premises of Defendant while in the status of a business invitee to whom a duty of due care under section 1802 of the Puerto Rican Civil Code was owed. The Court is satisfied as well that she fell because she stepped in spilled milk in the area of the express check-out lane, an area she could foreseeably have been expected to use as a patron of the commissary. The Court concludes that in the circumstances of the case, the spilled milk constituted an unreasonably dangerous condition which it was the obligation of the premises owner *to use reasonable care under section 1802 to ameliorate*, either upon achieving actual knowledge of the existence of the condition or as of the time that a reasonably prudent premises owner would have discovered the existence of the hazard under all of the circumstances of the case. The question here presented is whether Plaintiff's evidence shows such a failure to use due care.

The Court finds that there is an absence of any credible proof that this Defendant had actual knowledge of the existence of the hazard created by the spilled milk prior to the time that Plaintiff fell or that, in the exercise of due care, it should

have discovered the existence of that hazard before Plaintiff's fall. There is no evidence whatever as to the circumstances under which the milk came to be spilled in the area of the express check-out lane or when that occurred. All that one can conclude from the evidence is that it was there immediately prior to the time that Plaintiff fell. The only evidence that would indicate any knowledge of the existence of that condition on the part of Defendant is Plaintiff's testimony that the commissary's employee, Ms. Toledo, stated, during her discussions with Plaintiff after the fall, that the milk had been there for some time and that "they have not come to clean it up."

The Court, after a careful assessment of the credibility of the two witnesses, Plaintiff and Ms. Toledo, rejects the credibility of Plaintiff on this particular point and finds that the statement attributed by Plaintiff to Ms. Toledo was not, in fact, made by her. This determination is based upon the grave and serious demeanor of Ms. Toledo when she testified as a witness and the credibility of every other aspect of her testimony. She was a witness of uncommon sincerity with no apparent interest in the outcome of the case. She was extremely careful in all she said to speak in accordance with her own definite recollection of the facts.

Plaintiff, on the other hand, who had her deposition taken prior to trial and who was asked specifically to recount the events leading up to and following the fall, gave a rather detailed answer which made no reference whatever to any statement of Ms. Toledo indicating prior knowledge on the part of the employees of Defendant of the existence of the spilled milk at the location in question. She asserts that the reason she did not do so was that she was prevented from doing so by the manner of questioning at the deposition. The Court has carefully examined that portion of the deposition in question and determines that the manner of interrogation does not explain her failure to indicate at some time in the course of the deposition, and particularly in answer to the questions specifically eliciting her knowledge of the circumstances of the accident, such a crucial fact if it was then known to her.

An indication that Defendant was aware from some period of time before the fall that the dangerous condition created by the spilled milk existed in the area of the express check-out lane would be appreciated to be of obvious and vital significance even to a lay witness, particularly to one who is as well educated as is this Plaintiff.[5] Assuming proper preparation for the taking of her deposition by counsel, it is simply unimaginable that this circumstance would not have been mentioned by Plaintiff in the deposition if it was, in fact, a truth known to her about the circumstances of the accident prior to the time that the deposition was taken. The Court finds that the Plaintiff's testimony that Ms. Toledo indicated a prior knowledge of the spilled milk is a late-blooming, self-serving recollection of the Plaintiff, inspired by her interest in obtaining a verdict.

For all of the foregoing reasons, the Court is fully satisfied that Ms. Toledo did not make the statement in question and finds that, in fact, neither Ms. Toledo nor any other employee of Defendant had knowledge, or reason in the exercise of due care to have knowledge, prior to the time of Plaintiff's fall, of the existence of the spilled milk on the floor in the area of the express check-out lane. Plaintiff having failed to prove a crucial element of her claim,[6] namely, that the Defendant had

---

5. Plaintiff has several college degrees including a Ph.D.

6. The Court has read with keen curiosity the case of *Aponte v. Melendez,* 87 P.R.R. 619 (Belaval, 1963), which seems, at first reading, to cast doubt upon some vital aspects of this body of negligence law. There, the plaintiff slipped on a banana peeling on the floor of a grocery store and fell. The trial court ruled for the defendant on the ground that the plaintiff had presented no evidence that defendant had constructive knowledge of the existence of the hazard. The Supreme Court of Puerto Rico reversed. Its rationale for doing so is troubling because it is difficult to comprehend clearly. After reviewing *Gutiérrez v. Bahr,* 78 P.R.R. 451 (Belaval, 1955); *Goose v. Hilton Hotels International, Inc.,* 79 P.R.R. 494 (Snyder, 1956); and *Weber v.*

knowledge of the existence of the spilled milk and the dangerous condition which it represented or that it should have had such knowledge in the exercise of due care, has failed to sustain its burden of proof in this case. Accordingly, judgment shall be entered for Defendant herein.

So ORDERED.

*Mejias,* 85 P.R.R. 72 (Per Curiam, 1962), the Puerto Rico Supreme Court states:

> In this case the owner of the grocery store seeks to establish a defense of liability because of the fact that appellant's evidence failed to establish that the owner of the grocery store had had sufficient time to realize that there was dangerous matter on the floor. As a matter of fact, appellee offered no evidence in this case. In view of the present state of our case law and of the 1956 amendment to our Act which only recognizes as defense of liability, and solely for the purposes of reducing the indemnity, the concurrent imprudence of the aggrieved party, we do not believe that such a defense may prosper in the case of a blameless damage.

*Aponte,* 87 P.R.R. at 622.

It is tempting to read the *Aponte* case as saying that the premises' owner may be liable under section 1802 without fault; that is, as an insurer for dangerous conditions that occur without his actual or constructive knowledge of their existence. Careful study of *Aponte,* and of the other pertinent authorities on the point, satisfies this Court, however, that the case does not stand for that proposition. First, for it to do so would place the case in a direct and dramatic conflict with the specific language of section 1802 which *expressly* requires "fault or negligence" for liability to attach in the circumstances, *see supra* at 947, n. 4. Second, the proposition would also be in dramatic conflict with all the Puerto Rican authorities on premises liability decided both before and after *Aponte.*

The *Cotto* case, *supra* at 947–48, is a much more recent case than *Aponte,* and as shown in the text, makes clear that fault or negligence is required in fall cases, specifically that liability is

imposed only where the defendant has actual or constructive knowledge of the hazard, and that a premises holder is not an insurer or guarantor who may be held liable for dangerous conditions simply because they exist on the premises. Interestingly, the *Cotto* opinion cites *Aponte* along with the *Gutiérrez, Goose,* and *Weber* cases as precedents for these rules of substantive law. It is not, therefore, likely that the Puerto Rican Supreme Court regards *Aponte* as being outside the mainstream of negligence doctrine articulated by these other cases. If that is so, *Aponte* cannot stand for the radical proposition that a premises owner is liable without fault or negligence. Rather, its most reasonable interpretation is as an application of the teaching of *Weber;* that the plaintiff's burden of proof in establishing negligence is satisfied if there is evidence from which a fact finder can conclude that the hazardous condition resulted from a permanent condition negligently built into the premises to the knowledge of the owner or that, in the case of nonpermanent hazards, there was a failure on the part of the owner to use due care to carry out reasonable inspections required by the foreseeable uses of the premises. *Weber,* 85 P.R.R. at 75–77.

This Court concludes that *Aponte* was decided on the basis of some evidence in the record in that case, not articulated in the opinion, that the defendant there failed to use due care to inspect the premises in a reasonable manner for hazards of the type that caused the plaintiff's injury. Here, there is no evidence whatever from which it could be concluded that the milk occurred on the floor through a fault of the commissary or that it remained there for an unreasonably long period because of a failure of Defendant to use due care in making inspections of the premises. *Aponte* does not prevent the result reached here.