**Norberto Quiles COLÓN, et al., Plaintiff**

v.

**UNITED STATES of America, et al., Defendant.**

**Civ. No. 93–1197 (JP).**

United States District Court, D. Puerto Rico.

Feb. 22, 1995.

---

A. Santiago Villalonga, Nachman Santiago Bray Guillemard & Carrión, San Juan, PR, for plaintiff.

Isabel Muñoz Acosta, Asst. U.S. Atty., Hato Rey, PR, for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

Plaintiff, Norberto Quiles Colón, brought this action pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, to recover money damages for physical injuries he sustained on March 29, 1990, at the Veterans Affairs Medical Center, ("Hospital"). Plaintiff alleges that he slipped and fell on some food that a Hospital employee negligently spilled and left lying on the corridor floor. A bench trial was held on November 15, 1994. Based on the evidence presented

and after due deliberation, the Court now renders its findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Plaintiff is a sixty-two year old veteran of the Korean War.

2. Periodically over the past twenty years, plaintiff has been hospitalized at the psychiatric ward of the Hospital for treatment of schizophrenia. The Veterans' Administration has granted plaintiff, a one hundred percent (100%) service connected disability due to schizophrenia.

3. In addition, plaintiff has a fifty percent (50%) service connected disability due to hearing loss. Since the early 1980s, plaintiff has occasionally used a wheelchair whenever he felt imbalanced due to his hearing loss.

4. On March 5, 1990, plaintiff was admitted to the Hospital's psychiatric ward. He was suffering from schizophrenia and was experiencing hallucinations and paranoid ideation.

5. Around 5:30 p.m. on March 29, 1990, plaintiff felt the onset of a schizophrenic attack. In order to control himself, he decided to take a walk on the hospital premises. Plaintiff did not use his wheelchair on this particular evening because he was not experiencing any imbalance from his hearing loss. He left his room and walked down the corridor from Ward 2–D–2 to 2–C–1, and after meditating for a few moments, he started to return to his room. In the middle of the corridor, plaintiff slipped on some food and fell, hitting his head and back against the wall and landing on his hands. The force of the fall knocked plaintiff unconscious.

6. Also around 5:30 p.m., in the same Hospital corridor, a Hospital employee was collecting empty food trays after dinner and placing them on a food cart. The employee dropped a food tray and picked up the tray, but left some food lying on the floor. The employee then left the corridor without removing the food that remained or cleaning the corridor floor. Plaintiff and plaintiff's witness, Mr. Héctor Luis Camacho Busigó, testified credibly to the above effect.

7. Ms. Ester Jiménez, the supervisor of the Diet Service, testified that the Diet Service log book contained no record that any food had fallen from a food tray or cart on the evening of March 29, 1990. Therefore, Ms. Jiménez is of the opinion that the accident had not occurred. Another more plausible explanation exists as to why there is no record in the log book of this incident. The employee responsible for serving dinner to the patients did not testify at trial. This Hospital employee, contrary to Hospital regulations, dropped a tray of food and failed to clean it up properly. Then after the accident, the employee failed to report the incident to his supervisor. The fact that the Supervisor's log book has no record of the incident does not persuade this Court that the accident did not occur.

8. Plaintiff customarily wears a large, silver, Indian ring on the middle finger of his right hand. When he fell and hit his hands, the weight of his body crushed this ring against his finger. As a result, the fingers on his right hand became so swollen that he could not remove the ring. Medical records demonstrate that on the day following the fall, plaintiff complained of pain in his right hand. Despite his complaints, the ring was not removed from his finger until almost a month later. After the ring was removed, plaintiff's physician discovered lacerations on the third finger on plaintiff's right hand. These wounds had become infected, and cellulitis had developed. Thereafter, plaintiff was treated for the cellulitis with various types of antibiotics and hospitalized for one hundred and ten (110) days.

9. Defendant's witness, Dr. José Bernal, and defendant's expert witness, Dr. Carlos Grovas–Badrena, testified that in the case of a man such as the plaintiff, a 62–year old man with diabetes, lacerations from a cut on the hand should have become apparent within 48–72 hours after the injury occurred, not one month later. Defendant argues that since there is no evidence in the medical records of the lacerations on plaintiff's hand until about April, 1990, that the fall in March did not cause the cuts.

However, there is no evidence which refutes plaintiff's contention that on March 29,

1990, he fell, smashing the ring on the third finger of his right hand and that he was unable to remove the ring immediately. After the ring was removed a month later, the lacerations were discovered and treated. Therefore, the Court finds that the injury to the finger occurred on the day of the fall, even though the lacerations were not discovered until later.

10. Prior to the fall, plaintiff did not have a bulging disk in his back. On April 17, 1990, one month after the fall, medical records show that plaintiff suffered from a bulging disk. Therefore, the Court finds that, the fall caused or at least exacerbated the bulging disk in plaintiff's back.

11. By the end of May 1990, plaintiff's cellulitis was cured. Although plaintiff has used the wheelchair exclusively since the fall, the Court finds that there is no organic reason, other than the imbalance caused by the hearing loss, for the plaintiff to use the wheelchair.

## II. CONCLUSIONS OF LAW

█ The Federal Tort Claims Act provides that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances ..." 28 U.S.C. § 2674 (1982). Whether the United States is liable for the negligence of its employees is a question of state law. 28 U.S.C. §§ 1346(b), 2674; *Rodríguez v. United States*, 455 F.2d 940, 941–42 (1st Cir.1972).

█ The general source of law governing liability for negligence is Article 1802 of the Puerto Rico Civil Code, which states: "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141 (1990); *Gutiérrez v. Bahr*, 78 P.R.R. 450 (1955). In order to show negligence, plaintiff must demonstrate that defendant failed to exercise the degree of care that a prudent and reasonable person should exercise under the circumstances. *See Oliveros v. Abreu*, 101 P.R.R. 293 (1973); *Lozada v. Commonwealth*, 116 P.R.R. 250 (1985); and *Márquez Vega v. Martínez Rosado*, 116 P.R.R. 487 (1985).

█ As indicated in the Findings of Fact, a Hospital employee dropped a tray of food in the corridor on March 29, 1990, around 5:30 p.m. Although he picked up the tray, he left some food remaining on the corridor floor. A reasonable and prudent person would not have left food spilled all over the floor of a hospital corridor without taking steps to clean up the mess. The food carts should be equipped with supplies to clean accidental spills. At the very least, the employee should have placed the cart on top of the food to prevent someone from walking on it. By failing to clean the floor or warn patients of the spilled food, the employee created a hazardous condition. The employee's actions of spilling food on the corridor floor constituted negligence and leaving it on the floor constituted additional negligence. As the employee was acting within the scope of his employment, the Hospital is vicariously liable to a patient for his injuries sustained as a result of the employee's actions. 28 U.S.C. § 1346(b). *See Batista v. Juliá Hospital*, 71 P.R.R. 770 (1950); *Núñez v. Cintrón Ortiz*, 115 P.R.R. 786 (1984).

█ Although the Hospital is not absolutely liable for every accident that occurs on its premises, it is liable for those injuries which are foreseeable. *See Community Partnership v. Presbyterian Hospital*, 88 P.R.R. 379 (1963); *Hernández v. The Capital*, 81 P.R.R. 998 (1960). Patients with various physical and mental infirmities, as well as their visitors, walk about the premises and through the corridors of the Hospital on a daily basis. These patients rely on the Hospital to provide them with a safe and clean environment, and do not expect to find food lying on the corridor floors. It is foreseeable that a pool of spilled food lying in the middle of the corridor floor could cause a patient or a visitor to slip and fall on the food and sustain serious injury.

Nevertheless, defendant argues that it should not be held liable for plaintiff's injuries. It argues that the case at bar is exactly like a case recently decided by the First Circuit Court of Appeals, *Mas v. United States*, 984 F.2d 527 (1st Cir.1993). In that

case, plaintiff slipped and fell on some spilled milk while shopping at an army commissary at Fort Buchanan, San Juan, Puerto Rico. The District Court dismissed the case since it found that plaintiff had not proven that the commissary knew or should have known of the existence of the spilt milk. *Mas v. United States,* 784 F.Supp. 945 (D.Puerto Rico 1992). The First Circuit Court of Appeals affirmed the District Court's dismissal of the case, holding that as a matter of Puerto Rico law, a store owner must possess actual or constructive knowledge of a hazardous condition prior to a finding of liability for the injuries sustained by a business invitee. *Mas* 984 F.2d at 530.

Defendant asserts that it, like the commissary in *Mas,* did not have actual or constructive knowledge that there was food spilled on the corridor floor. Since there was no record in the log book of any accidents during the dinner shift on March 29, 1990, defendant denies that any food had been spilled. Further, defendant argues, it did not know, nor should it have known of the existence of the food on the floor. Assuming that the employee did spill the food, he probably left the mess unattended while he went to obtain the proper supplies to clean the floor. Soon thereafter, plaintiff passed through the corridor and fell. Therefore, defendant argues, there was insufficient opportunity for defendant to observe the food on the floor and to repair the condition before plaintiff was injured. Thus the Hospital, like the commissary in *Mas,* should not be liable.

■ However, defendant's reasoning fails to consider how the hazardous condition in each case came to exist. Since the plaintiff in *Mas* did not present any evidence showing how the milk was spilled on the floor or who spilt it, the court treated the spilt milk as an existing hazardous condition that either occurred innocently or was created by a third party.[1] Conversely, in the case at bar, the hazardous condition was created by the actions of a Hospital employee. Therefore, the Hospital's liability is derived not only from the duty a landlord owes to business invitees to keep the premises free from hazardous conditions, but also from the liability of an employer responsible for the negligent actions of its employees. And whereas the element of actual or constructive knowledge is a necessary precondition to a finding of liability in the former situation, it is irrelevant in the latter.

Plaintiff has shown by a preponderance of the evidence that an employee of the Hospital was negligent in creating and maintaining a hazardous condition and failing to take steps to repair the hazardous condition or to warn against it; and that the employee's negligence caused plaintiff's injuries.

From the evidence presented, the Court calculates the amount of plaintiff's injuries as follows:

1. Injury to the hand and arm. Cellulitis in the third finger of the right hand, and accompanying pain and suffering, during approximately two months. Valued at Twenty Thousand Dollars ($20,000.00).

2. Loss of freedom of movement during one hundred and ten (110) days while confined to the Hospital, convalescing from the cellulitis. Valued at Eighty Thousand Dollars ($80,000.00).

3. Bulging disk in the dorsal spine, and accompanying pain and suffering. Valued at Twenty Thousand Dollars ($20,000.00).

4. Injury to the head, including nose bleeds, and accompanying pain and suffering. Valued at Five Thousand Dollars ($5,000.00).

■ The Court, however, cannot award plaintiff the full sum of the damages he has suffered. On the Standard Form 95 presented to the Department of Veteran Affairs, plaintiff originally requested Fifty Thousand Dollars ($50,000.00) as compensation for the injuries he sustained. The Court is limited in awarding damages to the amount therein reflected. Therefore, the Court AWARDS plaintiff the sum of Fifty Thousand Dollars ($50,000.00) for the injuries suffered.

1. "There is no evidence whatever as to the circumstances under which the milk came to be spilled in the area of the express checkout lane or when that occurred. All that one can conclude from the evidence is that it was there immediately prior to the time that Plaintiff fell." *Mas* 784 F.Supp. at 949.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 22nd day of February, 1995.