Rossy García, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
El recurso instado en el caso de epígrafe interesa la revisión de una sentencia dictada el 5 de febrero de 1998 por el Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Aguadilla (Hon. Miriam Santiago Guzmán). Mediante ésta, dicho foro declaró " CON LUGAR" la demanda instada por los co-demandantes Madeline Medina Negrón y su esposo Monserrate Morales Soto contra la demandada-apelante, Wal-Mart, Inc. (Wal-Mart), ello en solicitud de indemnización por los alegados *815 daños resultantes de una caída que sufriera la Sra. Medina Negrón en la tienda que la referida empresa opera en el pueblo de Isabela. Al así dictaminar, el foro aquí apelado resolvió que "la parte demandada incurrió en negligencia al permitir que en el piso de la Tienda Wal-Mart, estuviera regada una sustancia resbalosa por un período de tiempo irrazonable, lo que provocó que la parte demandante, Madeline Medina Negrón, resbalara en dicha sustancia resbalosa, se cayera y sufriera daños y perjuicios tanto físicos como morales". Emitió así sentencia condenando a la parte demandada a satisfacer a los demandantes, en resarcimiento por los daños resultantes, las siguientes partidas: "A. A Madeline Medina Negrón por los daños y perjuicios físicos y las angustias morales que sufrió, la cantidad de $6,000.00, [y] B. A Monserrate Morales Soto por las angustias mentales y morales que sufrió debido a los [referidos daños recibidos por] su esposa, la cantidad de $1,000.00". De otra parte, al haber concluido que "la parte demandada fue temeraria, pues a base del testimonio de sus propios testigos era claro que la parte demandada fue negligente", le impuso a dicha parte "el pago, de $2,000.00 en concepto de honorarios de abogado". 
Inconforme con dicho dictamen y luego de serle denegada una moción en solicitud de determinaciones adicionales de hechos que fue presentada en tiempo oportuno, procedió Wal-Mart, a interponer el recurso de apelación que nos ocupa. En el mismo esencialmente cuestiona, como fundamentos de revocación, la determinación de negligencia en la que el tribunal de instancia encontró incursa a Wal-Mart, así como la correspondiente imposición de daños, lo que aduce que no encuentra apoyo en la prueba desfilada. De otra parte, cuestiona la determinación de temeridad hecha por el foro de instancia, base para la imposición de los honorarios de abogado. 
Toda vez que mediante el señalamiento de los referidos errores Wal-Mart, impugnó la suficiencia y la apreciación que de la prueba hizo el tribunal de instancia en ocasión de la vista en su fondo, dicha parte apelante sometió una transcripción de la prueba oral, solicitando de este foro su aprobación en sustitución de una exposición estipulada. Mediante resolución emitida el 26 de junio de 1998 concedimos parcialmente lo solicitado, otorgándole término al matrimonio Morales-Medina, demandante-apelada, para que formulara cualquier señalamiento u objeción a la transcripción sometida. No habiendo expresado esta última parte objeción alguna, dispusimos la presentación de alegatos suplementarios, ello de conformidad con las Reglas 21 y 22 del reglamento de este foro. Las partes han comparecido a tenor, por lo que tomamos por perfeccionado el recurso sin ulterior trámite.
Encontrándonos ahora en condición de dictaminar luego de un cuidadoso análisis de los escritos sometidos y la transcripción de la prueba oral, ello a la luz del derecho aplicable y su jurisprudencia interpretativa, resolvemos que los errores señalados no se cometieron por lo que resulta procedente emitir sentencia confirmatoria de la apelada.
I
El 11 de diciembre de 1995 y alrededor de la una y media de la tarde, Madeline Medina Negrón (Madeline) y su esposo Monserrate Morales Soto (Sr. Morales) se dirigieron desde su hogar, sito en el barrio Guerrero de Aguadilla, a hacer unas compras en el establecimiento que la demandada-apelante opera en el pueblo de Isabela. Luego de efectuar la selección de los artículos cuya compra fue el propósito de la visita en cuestión a Wal-MArt. —los que consistían de comida para perro y de unos detergentes— y de "desplazarse] por la tienda mirando otras cosas, porque estábamos en Navidades", Madeline y su esposo decidieron realizar el pago por la referida mercancía.
A tales propósitos, el Sr. Morales, quien llevaba el carro de compras, se adelantó en dirección de las cajas registradoras atravesando por el área de cosméticos, por lo que Madeline se quedó rezagada por una distancia de unos diez (10) a quince (15) pies con relación a su esposo. Según surge de la transcripción de la prueba oral, Madeline describió lo que sucedió en los próximos instantes de la siguiente forma:

"R. [M]i esposo iba al frente de mí con el carrito, con las cosas que habíamos comprado y yo iba caminando detrás de él. Cuando de momento, yo resbalé. Me caí y cuando me fui a caer, traté de aguantarme de algo y me aguanté de una góndola que tenía como dulces, galletas... cómo le diría yo... esos "Cool-Aid" que viene como así, como en agua que los ponen a congelar y eso me cayó encima. 

*816
Entonces, pues me di golpes... porque mi esposo cuando sintió el ruido me dice:

--"¿Qué te pasó", y yo le dije:

—"Me caí" y me dijo:

— "Levántate", y yo le dije: "Pues, es que no me puedo levantar", y cuando yo miré, pues había algo en el piso tirado." 
Por su parte, y a preguntas de su representación legal, el Sr. Morales describió el referido suceso en estos términos:

"R. [o] sea, cuando yo voy con mi carrito hacia la caja para pagar, pues yo siento un ruido...

P. ¿Qué tipo de ruido?

R. Pues, como que se cayó algo. Como cuando usted siente que están cayéndose... que cayeron unos artículos al piso, que están a una altura que caen y eso fue lo primero que sentí. Entonces miro hacia atrás.

P. Ese ruido con relación a su persona, ¿hacia que lado usted lo oía?

R. Perdón. Detrás de mi espalda, lo oí.

P. Hacia la parte trasera suya. Continúe.

R. ... Entonces, como muevo la vista., que muevo la vista y miro hacia atrás, pues lo que veo es a mi esposa en el piso, con todo un revolú de cajas que se habían caído y ella en el piso." 

Cuestionada como fue Madeline acerca de si sabía "¿.. porqué fue que resbaló?", su declaración generó el siguiente diálogo:

"R. Sí.

P. Explíquele al Honorable Tribunal.

R. Porque había una substancia en el piso.

P. ¿Por qué usted sabe que había una substancia en el piso?

R. Porque la vi después que me caí y... Rápido que mi esposo y el señor...

P. No, usted, usted.

R. Rápido que me caí..

P. Anjá.

R. Que ahí fue que me dijo:

—"¿En qué resbalaste", y yo le dije:

—Yo no sé, mira a ver. Cuando mira así me —"Mira, aquí hay algo"...

P. ¿Y usted la vio con sus ojos esa substancia?

R. Exactamente..

*817
P. Explíquele al Honorable Tribunal., cómo era esa substancia.

R. Una substancia incolora.

P. Cuando usted dice "incolora", ¿qué usted quiere decir?

R. Que era transparente." 
En lo que respecta a lo acontecido luego de la ocurrencia del accidente, el testimonio de Madeline fue a los efectos de que una empleada de Wal-Mart, de nombre Doris Cortés Rosado procedió a limpiar el piso donde se encontraba la substancia resbalosa en cuestión con un mapo: que ella estuvo en el piso por espacio de quince minutos en lo que otro empleado fue a buscar una silla de ruedas; que su condición durante ese período era de un fuerte dolor en la cadera izquierda; que se arremolinó un 'montón de gente' a su alrededor a consecuencia de su caída y de que permanecía en el piso, razón por la cual se sentía 'abochornada'; que no se pudo levantar por el dolor que tenía en la cadera izquierda; que eventualmente llegó el empleado con el sillón de ruedas y que entre otro empleado llamado Dennis Rivera (Sr. Rivera) y su esposo la ayudaron a levantarse y a colocarla en el referido sillón; que mientras su esposo buscaba el auto el Sr. Rivera la llevó hasta la salida del establecimiento; y que su esposo la llevó a la oficina del Dr. Navedo, en el poblado San Antonio de Aguadilla. De otra parte, del testimonio del Sr. Morales surge que el Sr. Rivera, quien resultó ser el asistente del gerente de Wal-Mart, le indicó que en la tienda no había ninguna facilidad médica ni que le podían gestionar una ambulancia; que el Sr. Rivera le tomó sus datos personales con el propósito de hacer un informe; y que la visita al Dr. Navedo la hicieron por cuenta propia toda vez que Wal-Mart, no los refirió a médico o institución hospitalaria alguna. 
Una vez el Sr. Morales trasladó a su esposa Madeline a la oficina del Dr. Navedo y atendida como fue por dicho galeno, éste le puso una inyección y le prescribió pastillas para el dolor, así como relajantes musculares. Le ordenó, asimismo, la aplicación de paños calientes y compresas en el área donde mostraba hematomas, a saber, toda la cadera. Surge también que, además del dolor en la cadera, tenía afectada la mano derecha, el dedo grande de la mano izquierda y parte del cuello. Respecto al tiempo en que estuvo padeciendo de dolor en las áreas afectadas y el tratamiento médico recibido, se desprende del expediente que Madeline tuvo que visitar al Dr. Navedo en cuatro o cinco ocasiones; que en cada visita la tenía que inyectar; que como el dolor persistía le tuvo que cambiar los medicamentos; y que los dolores se prolongaron por un espacio de cuatro o cinco meses.
Ello dio base a que el 15 de noviembre de 1996, los co-demandantes de epígrafe instaran la acción en daños y perjuicios que culminó con la sentencia ahora apelada. En la misma, luego de hacer referencia a los hechos básicos hasta aquí reseñados relativos a la ocurrencia del accidente, dicha parte alegó que, como resultado del mismo, la co-demandante Madeline "sufrió fuerte hematoma en la nalga izquierda, hematoma en el muslo derecho, golpe en la parte cervical del cuello, golpe en la mano izquierda; y golpe en el dedo pulgar de la mano izquierda del que aún sigue padeciendo", y que "la única causa próxima, real y eficiente que provocó los daños y perjuicios sufridos por la parte demandante lo es la negligencia y/o culpa de la parte demandada al mantener el piso de la tienda Wal-Mart, de Isabela mojado con aceite de bebé en momentos en que por él discurrían personas tales como la [co]demandante sin tomar las medidas preventivas para evitar un accidente como el sufrido [por Madeline]". Como remedio solicitó, en lo que a ella respecta, indemnización por los daños resultantes por una suma que estimó en $35,000.00, así como otra por la cantidad de $5,000.00 para su esposo, el Sr. Morales, por sus sufrimientos y angustias mentales. Peticionó, de igual forma, que se le resarciera por los gastos médicos y de medicamentos en que incurriera a causa del referido accidente, y que se le impusieran a Wal-Mart, honorarios de abogado 
Emplazada como fue, el 10 de enero de 1997 Wal-Mart, presentó su contestación a la demanda. En la misma negó tanto la ocurrencia del accidente como la negligencia imputada por razón de que alegadamente, "la parte aquí compareciente sólo cuenta con las declaraciones de la parte demandante sobre este asunto". En oposición, y como defensas afirmativas adujo, entre otras, que " [en forma o manera alguna la compareciente ha actuado en forma negligente... y por el contrario si algún daño sufrió la demandante, se debió a su propia negligencia". Alegó, además, que "de existir daños, los mismos se los causó o autoinfligió la propia demandante". 
*818 Agotados como fueron los mecanismos de descubrimiento de prueba, no sin antes mediar una moción peticionando sentencia sumaria a favor de la promovente Wal-Mart, -la que fuera denegada el 8 de abril de 1997 luego de ser replicada por la demandante- y señalado el caso como fue para una conferencia con antelación a juicio, las representaciones legales de las partes se reunieron para producir el correspondiente informe de conferencia preliminar entre abogados. Según surge de autos, se consignaron allí las estipulaciones alcanzadas, las respectivas teorías jurídicas de las partes, se definieron las controversias y se indicó la prueba testifical y documental que habrían de aportar en apoyo a sus respectivas contenciones. En particular, y en lo pertinente, los litigantes convinieron en limitar las controversias a la determinación de la responsabilidad por negligencia en la ocurrencia del accidente, la naturaleza de los daños resultantes y la valoración o cuantía reclamada por los mismos. 
Definidas como quedaron las controversias según expuesto, y celebrada como fue la conferencia con antelación al juicio el 25 de agosto de 1997, la vista en su fondo se llevó a cabo el subsiguiente 22 de septiembre, en cuya ocasión la demandante desfiló prueba testifical en apoyo a su contención consistente de las declaraciones de ambos co-demandantes, Madeline y su esposo, el Sr. Morales. Ofreció en evidencia, además, el expediente médico de Madeline generado en la oficina del Dr. Navedo a consecuencia del accidente. Concluida la prueba de los demandantes y luego de que el foro de instancia denegara una moción de non-suit que fue promovida por Wal-Mart, procedieron los demandados-apelantes a presentar la suya. A tenor, dicha parte presentó la declaración de Doris Cortés Rosado, quien todavía se desempeñaba como empleada de Wal-Mart, en ocasión de la vista, así como la de Aristides Seijo Vega, este último ex-empleado de la compañía. Como prueba documental ofreció una copia del Manual de Seguridad dirigido a los empleados de Wal-Mart. 
Sometido como quedó el caso "a base de la prueba desfilada, y de la credibilidad que [le] mereció el testimonio de los testigos de las partes", el foro de instancia emitió la sentencia que es ahora objeto de impugnación, En lo pertinente determinó, como cuestión de hecho, que quedó probado como realidad incontrovertida que en el piso de la Tienda Wal-Mart, había una substancia regada en él, la cual era resbaladiza y en la que resbaló y se cayó la Sra. Madeline Medina Negrón; desmereció el testimonio aportado por la testigo Doris Cortés Rosado, que declaró a los efectos de que menos de tres (3) minutos antes de que ella acudiera al rescate de la Sra. Madeline Medina Negrón, la testigo personalmente había pasado por el área donde la demandante resbaló y no vio nada peligroso en el piso; determinó a base del testimonio aportado por los testigos de la propia demandada-apelante que el suceso de la caída aconteció en tiempo de Navidad y que ese día la Tienda estaba llena de gente; que ese día no habían conserjes en el área donde ocurrió el accidente; así como que había una substancia resbaladiza tirada en el piso y que los propios testigos de la demandante no sabían cúanto tiempo dicha substancia estuvo tirada en el piso. Concluyó así que la substancia estuvo regada en el piso por un tiempo irrazonable "porque del mismo testimonio de los testigos de la parte demandada surge que el área de la caída no estaba atendida por conserje ese día, y además, ese día de la caída era época de Navidad y habían muchas personas haciendo compras en esa área. Fue tan irrazonable el tiempo que estuvo la substancia resbaladiza en el piso que provocó que una de las dientas de la Tienda, la demandante, Madeline Medina Negrón, resbalara y se cayera".
De otra parte, y en lo que respecta a los daños resultantes, formuló la siguiente determinación:

"6. La Sra. Madeline Medina Negrón fue conducida por su esposo en su vehículo desde la Tienda Wal-Mart, de Isabela hasta el consultorio médico del Dr. Angel Navedo en el Poblado San Antonio de Aguadillo. Que el Dr. Navedo le brindó a la demandante tratamiento médico y que ésta fue al consultorio de dicho médico en varias ocasiones a recibir tratamiento con relación a los golpes y hematomas que recibió de la caída. Que el Dr. Angel Navedo le dio el siguiente tratamiento a la demandante, Madeline Medina Negrón: le recetó Motrin 600 para el dolor; le recetó unas pastillas como relajantes musculares; le puso una injección [sic] como relajante para el dolor; y además le ordenó que se pusiera paños tibios en la nalga izquierda, en el muslo derecho y en la mano izquierda, donde había sufrido hematomas y golpes, esto según lo declarado por la demandante. Con relación al tratamiento, prescripción médica y medicación que el Dr. Angel Navedo le administró a la demandante, la parte demandada no presentó prueba para controvertir estos hechos, por lo que el Tribunal establece como Hechos probados el tratamiento, la prescripción médica y la medicación que recibió la parte demandante. Que la parte demandante, Madeline Medina Negrón, sufrió daños 
*819
físicos consistentes en una [sic] hematoma en la nalga izquierda, y golpe en el dedo pulgar de la mano izquierda del que aún al día del juicio seguía padeciendo de dolor.

Que la parte demandante sufrió angustias morales y emocionales al resbalar y caerse en el piso de Wal-Mart, de Isabela y verse tirada en el piso rodeada de muchas personas que como curiosos estaban allí mientras ella sufría fuertes dolores físicos. El Tribunal determina como un hecho probado... por la parte demandante y no controvertido por la parte demandada, que dicha parte demandante fue cargada en su sillón de ruedas provisto por la parte demandada, el cual era empujado por el esposo de la parte demandante hasta el vehículo de éste todo ello delante de bastante público que estaba en la Tienda de compras."

En función de tales determinaciones, el tribunal de instancia concluyó, como cuestión de derecho, que la apelante Wal-Mart, Inc., "incurrió en negligencia al permitir que en el pasillo del área cercana a los cosméticos hubiera regada en el piso una substancia resbaladiza [...] por un tiempo irrazonable, porque de la misma prueba de la parte demandada surge que ese día la Tienda no tenía conserje a cargo del área donde sufrió la caída la parte demandante, y que la Gerente del área de Cosméticos, que fue el área de la caída, estaba trabajando sola y atendiendo mucho público por ser época de Navidades". 
Para fundamentar sus conclusiones, el tribunal de instancia encontró apoyo en el caso de Aponte Betancourt v. Meléndez, 87 D.P.R. 652, 655 (1963), en el cual el Tribunal Supremo resolvió que "el hecho de no haber demostrado la prueba que el [dueño del establecimiento comercial] había tenido tiempo suficiente para percatarse que había materia peligrosa en el suelo", no es un eximente de responsabilidad. Juzgó así que al caso de autos no le era de aplicación la norma establecida en el caso de Cotto v. C.M. Insurance, Co., 116 D.P.R. 644 (1985), ya que, distinto a la situación que aquí contemplamos, allí la demandante no pudo aportar prueba acerca de la existencia de una situación peligrosa la cual le produjera la caída. Desmereció así la contención de la apelante a los efectos de que, una vez se prueba tal condición, es necesario establecer que a la parte demandada le era imputable el conocimiento de la existencia de tal situación de peligrosidad.
Resolvemos ahora, toda vez que en la interpretación de este último requisito se ha dicho que el mismo se cumple cuando se establece, a satisfacción del juzgador de hechos, que una persona razonablemente prudente hubiese descubierto la condición peligrosa ejerciendo el debido cuidado (due care) tomando en consideración las circunstancias particulares del caso en cuestión, Goose v, Hilton Hotels, 79 D.P.R. 523 (1956); Mas v. United States, 784 F. Supp. 945, 948 (1992), y por los fundamentos adicionales que pasamos a exponer, que resulta procedente confirmar la sentencia apelada.
II
Como es sabido, en nuestra jurisdicción la regla general que priva en el campo de la responsabilidad extracontractual es que aquél que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, estará obligado a reparar el daño causado. Art. 1802, Código Civil, 31 L.P.R.A. see. 5141, De dicho principio se desprende que todo perjuicio, sea éste material o moral, da lugar a reparación si concurren tres requisitos o elementos: (1) la ocurrencia de un daño real; (2) la existencia de un nexo causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u omisión sea culposo o negligente. Díaz v. E.L.A., 118 D.P.R. 395, 418 (1987); Pérez Escolar v. Collado, 90 D.P.R. 806, 811 (1969); Hernández v. Fournier, 80 D.P.R. 93, 96-97 (1957).
En el caso de la ocurrencia de omisiones, se ha postulado que los factores a considerarse para determinar si tal omisión genera responsabilidad bajo el citado artículo 1802 son (1) la existencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual se constituye en el acto antijurídico y (2) si de haberse realizado el acto, se hubiera evitado el daño. Soc. de Gananciales v. González Padín, 117 D. P.R. 94, 106 (1986). Del concurso de ambos factores surge el deber de previsibilidad, toda vez que "el Art. 1802 gira inevitablemente en torno a la función de previsión del individuo, como factor determinante de su responsabilidad con su congénere". Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987). Es decir, la norma de responsabilidad dependerá de la concurrencia de una omisión que constituya conducta afirmativa que aumente el riesgo de daño y que sea razonablemente previsible la ocurrencia del daño, por lo que se crea un deber de prevenirlo. *820 J.A.D.M. v. Centro Comercial Plaza Carolina, et al., 133 D.P.R.__ (1993), 93 J.T.S. 26, pág. 10437,
Por otro lado, la parte que reclama resarcimiento en una acción de daños y perjuicios queda indefectiblemente sujeta a demostrar la existencia de relación causal de acuerdo a los preceptos que informan la causalidad adecuada, doctrina que rige en Puerto Rico para determinar causalidad legal entre la acción u omisión negligente y el daño sufrido. Sociedad Legal de Gananciales v. Jerónimo Corporation, 103 D.P.R. 127 (1974). Conforme a ella, no es causa toda condición sin la cual no se hubiera producido el resultado, sino aquélla que ordinariamente lo produce según la experiencia general por lo que, a su amparo, la cuestión a resolver gira alrededor de la determinación de si la materialización del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo. Jaime Santos Briz, Comentarios al Código Civil y Compilaciones Forales, T. XXXIV, Ed. Rev. Der. Priv., Madrid (1984), pág. 267.
Así, en casos como el de autos, la interrogante que debemos planteamos respecto a este extremo es si la condición por la cual reclama Madeline, "los golpes, hematomas y fuertes dolores físicos antes dichos a consecuencia de la caída, [además de las] angustias mentales y morales, ya que dicha caída fue en público", son la consecuencia lógica de la caída que sufriera a raíz de la negligencia imputádale a la demandada Wal-Mart, o si, por el contrario, tales condiciones no responden a la causa y la negligencia alegadas. Ello, a la vez, deberá ser atemperado a los preceptos jurídicos aplicables a las reclamaciones originadas por caídas ocurridas en establecimientos comerciales, consideración que atenderemos en el curso de esta sentencia.
Finalmente, en perfecta armonía con la teoría de responsabilidad extracontractual que nos ocupa, la doctrina sostiene que es la obligación del demandante establecer que la omisión alegada fue la que generó los daños por los cuales se pretende que un demandado responda. En cuanto a este extremo, se hace menester enfatizar el hecho de que, en una acción de esta naturaleza, no basta con establecer la ocurrencia de un daño sino que el demandante tiene el deber de ofrecer prueba ya que, al igual, que ocurre con la existencia de culpa o negligencia y la relación causal entre dichos elementos, "en la litigación civil extracontractual puertorriqueña es condición sine qua non desfilar prueba [del daño reclamado]... para que prospere [la] causa de pedir del [demandante]". José A. Cuevas Segarra, La Responsabilidad civil y el daño extracontractual en Puerto Rico, Publicaciones J.T.S., San Juan (1993), pág. 82; Portilla v. Carreras de Shira, 95 D.P.R. 804, 812 (1968).
Analicemos la situación de hechos que nos presenta el caso de autos, así como los errores planteados por la apelante, a la luz del cuadro doctrinal y jurisprudencial expuesto.
III
-A-
En el normativo caso de Cotto v. C.M. Ins., el Tribunal Supremo de Puerto Rico estableció que:
"una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinan el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tiene acceso sus clientes como un lugar seguro." Cotto v. C.M., Ins., 116 D.P.R. 644, 650 (1985).
Juzgó así el alto foro que es ese el deber jurídico de tales empresas cuyo incumplimiento se constituye en la negligencia por omisión que bajo los auspicios del Art. 1802, supra, conlleva la imposición de responsabilidad. Ello no obstante, advirtió que, según la directriz previamente pautada en Goose v. Hilton Hotels, supra, págs. 527-528, esto no significaba que el dueño del establecimiento fuera "un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extendía al ejercicio del cuidado razonable para su protección", y que la parte actora en un caso de daños y perjuicios donde alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada, tiene que probar que el dueño del establecimiento no "ha ejercido el cuidado debido para que el local sea seguro para él".
*821 Abordando la situación específica en la que se reclama por caídas ocurridas en establecimientos comerciales, el alto foro ha exigido al perjudicado "que pruebe, como parte esencial de la causa de acción que ejercita, la existencia de la condición de peligrosidad que ocasionó la caída" y que la misma era "de conocimiento de los propietarios o su conocimiento podía imputársele a éstos". Cotto, supra, págs. 650-651. Surge, pues, con claridad meridiana, que en el proceso de declarar incurso en negligencia a un local comercial, son dos los factores que tienen que estar presentes: 1) que exista en el establecimiento una condición peligrosa y 2) que el propietario conocía o debió haber conocido de su existencia, o sea, que le es imputable el conocimiento constructivo de la existencia de la situación de peligrosidad de que se trate. Ello significa que luego de evindenciarse, como cuestión de hecho, la existencia de una situación peligrosa, debe quedar establecido que bajo las circunstancias que median en el caso, la parte demandada -ejerciendo una prudencia razonable- pudo haber descubierto la condición peligrosa antes de que ocurriese el accidente por el cual se le reclama. Mas v. United States, supra, pág. 948.
En el caso que nos ocupa, claro resulta, y así quedó probado a satisfacción del tribunal en función de la prueba aportada el día de la vista en su fondo, que concurren ambos factores requeridos por nuestra jurisprudencia: de una parte, resultó ser un hecho incontrovertido la existencia de un substancia incolora o transparente regada en el piso de uno de los pasillos de la tienda Wal-Mart. Según surge de la transcripción, dicha situación de peligrosidad fue advertida por la co-demandante Madeline cuando la palpó al poner la mano en el piso tratando de protegerse cuando resbaló y cayó en el-pasillo frente al área de cosméticos de la Tienda Wal-Mart, de Isabela el 11 de diciembre de 1995. Estimó que se trataba de aceite de bebé. De otra parte, la existencia de tal substancia en el piso de la tienda fue asimismo establecida por Doris Cortés Rosado —testigo de la demandada— tanto en una declaración jurada como mediante el testimonio ofrecido el día de la vista en su fondo, cuando indicó que limpió la substancia en cuestión con papel toalla y que, al olería, le pareció más bien Colonia de baño. En su virtud, no experimentamos incertidumbre alguna en cuanto a que Madeline no se cayó de sus propios pies, sino que su caída se debió a que existía una substancia resbalosa que estaba esparcida en el pasillo por donde ésta transitaba en camino a efectuar el pago de la mercancía cuya compra motivó su visita a Wal- Mart, junto a su esposo, el día de los hechos aquí relacionados.
Evidenciada como quedó la existencia de la referida substancia, y al ponderar sobre el factor de si la demandada sabía, o debió haber sabido, la realidad de tal situación de peligrosidad dentro de su recinto, ello quedó establecido a satisfacción del foro de instancia según determinado por éste en la sentencia apelada. Tal conclusión, a su vez, encuentra apoyo en la prueba que fue aportada en ocasión de la vista en su fondo, según surge ésta de la transcripción. Veamos.
Doris Cortés Rosado, cuyo testimonio fue ofrecido por Wal-Mart, declaró que ese día ella era la gerente del área de cosméticos; que era la época de Navidades; que en esa ocasión, al igual que "todos los días", ella "trabajaba sola"; y que el día en que ocurrieron los hechos que nos ocupan, en su área "había bastante gente". Declaró, además, que no había visto al conserje ese día en el área donde ocurrió el accidente. Así, su testimonio respecto a estas ultimas circunstancias corroboró aquél prestado con anterioridad por el Sr. Aristides Seijo Vega, testigo igualmente presentado por la demandada Wal-Mart, quien declaró que:

'77el tiempo que sucede esto [la caída de Madeline] es un tiempo de Navidad [11 de diciembre], un tiempo que básicamente está la Navidad de cerca. Un tiempo de Navidad, la tienda está llena de gente, pero llena a capacidad. La [sicl tienda está llena, puede venir un "shopping car" que mayormente es lo que ocurre... Una persona viene con un "shopping car", [sic] los potes... muchas cantidades de potes vienen defectuosos, puede venir un pote un "shopping car", [sic] la persona puede detenerse en el área donde están los perfumes, puede gotear, puede seguir goteando. Uno no se da cuenta, porque obviamente hay líquidos que son transparentes completamente.

El piso de Wal-Mart, se pule todas las noches. Eso siempre es un espejo. Básicamente es un poco difícil tú ver a menos que no sea [sic] una... como dice uno... un bache, una cantidad grande de agua. Algo muy pequeño, estamos hablando que se me hace imposible... tu sabes... a menos que uno lo vea o sea adivina. Pero uno no puede caminar básicamente mirando..." 

De otra parte, ninguna razón o fundamento existe para intervenir con la valoración y apreciación que *822 de la prueba hizo el foro de instancia al desmerecer y no conferir credibilidad a lo declarado por Doris Cortés Rosado a los efectos de que ésta tuvo la oportunidad de examinar el área donde ocurrió el accidente tres minutos antes de que éste ocurriera y no vio nada peligroso en el piso, extremo sobre el cual el foro de instancia así concluyó expresamente.
Ahora bien, factores adicionales militan contra la contención de los apelantes y fortalecen el dictamen apelado.
Un examen de la totalidad de la prueba vertida ante el foro de instancia en ocasión de la vista en su fondo y, en particular, de las circunstancias prevalecientes el día de la ocurrencia del accidente, constituye base suficiente para razonablemente concluir, como lo hizo el foro de instancia, que Wal-Mart, pudo haber descubierto, ejerciendo prudencia razonable, la condición peligrosa que ocasionó la caída y los resultantes daños físicos y mentales de Madeline, así como las angustias mentales de su esposo, el Sr. Morales.
Ello resulta obvio de las propias declaraciones de los testigos de la demandada, uno de los cuales reconoció que Wal-Mart, está consciente de la situación de peligrosidad que puede ocasionar un derrame proveniente "de su envase mientras el cliente lo lleva en su carrito de compra". Tal posibilidad de riesgo está contemplada, además, en el Manual de Seguridad del empleado cuando se refiere a la ocurrencia de posibles derrames. A su vez, los asociados de Wal-Mart, aceptan que tal situación se agrava ante el hecho de que, como "hay líquidos que son transparentéis]por completo", a consecuencia de que el piso de Wal-Mart, se pule todas las noches y "es un espejo", resulta "difícil tú . ver a menos que no sea [sic]....un bache, una cantidad grande...". 
Reconocida y aceptada por Wal-Mart, la probabilidad de la existencia de una condición de peligrosidad como la que de hecho estaba presente cuando Madeline resbaló en un líquido que estaba desparramado en un pasillo de su establecimiento comercial sito en Isabela, veamos las circunstancias preponderantes en dicha tienda el día de tal ocurrencia. Según los testigos de la demandada, Doris Cortes Rosado y Aristides Seijo Vega, surge que esa era la época de navidades; que la tienda estaba repleta de clientes; que la persona a cargo del área de cosméticos —cerca de donde ocurrió el accidente— estaba laborando sola durante todo su tumo de trabajo y que ese día ésta tuvo que atender una clientela considerable así como acomodar mercancía; que no había ningún conserje encargado de la referida sección de la tienda; y que a pesar de las instrucciones impartidas por Wal-Mart, a sus empleados en su manual de seguridad, en tales circunstancias "uno no puede caminar básicamente mirando...[si existen condiciones de peligrosidad en la tienda]”. A tenor, pues, tampoco resulta infundado considerar que Wal-Mart, pudo haber descubierto el derrame que causó la caída de Madeline si hubiera ejercido una prudencia razonable para detectarla. El error señalado al respecto no se cometió.
-B-
Se limita a cuestionar la apelante, en su tercer señalamiento de error, la indemnización de $6,000.00 concedida a la co-demandante Madeline Medina Negrón, ello toda vez que no se impugna en forma alguna aquella de $1,000.00 determinada a favor del co-demandante Monserrate Morales Soto, esposo de aquella, por las angustias y sufrimientos morales por él sufridos. Resolvemos que tal indemnización que es ahora objeto de impugnación no es una desproporcionalmente alta que justifique nuestra intervención para modificar la misma. Urrutia v. A.A.A., 103 D.P.R. 643 (1975). Veamos.
En la demanda que dio base al dictamen apelado, la co-demandante Madeline Medina Negrón alegó que "mientras se encontraba en la Tienda Wal-Mart, de Isabela resbaló y al tratar de evitar caerse se aguantó de una de las góndolas y ésta le cayó encima". Adujo, además, que a consecuencia de dicho incidente sufrió daños físicos consistentes en un "fuerte hematoma en la nalga izquierda, [un] hematoma en el muslo derecho, [un] golpe en la parte cervical del cuello, [un] golpe en la mano izquierda, y [un] golpe en el dedo pulgar de la mano izquierda del que aún sigue padeciendo"; y que "además de sufrir los golpes, hematomas y fuertes dolores físicos antes dichos a consecuencia de la caída, sufrió angustias mentales y morales, ya que dicha caída fue en público". 
Para sostener la afirmativa de su contención, Madeline aportó prueba consistente de su propio *823 testimonio así como el de su esposo, Sr. Morales; declaraciones que establecieron la realidad de la caída sufrida por Madeline a causa de una substancia resbalosa derramada en un pasillo de Wal-Mart, de Isabela; el dolor físico que experimentó a raíz de la misma, que no le permitió levantarse por sí misma y que la obligó a trasladarse desde el lugar de la caída hasta su auto en una silla de ruedas provista por la demandada Wal-Mart; la angustia mental que le produjo el hecho de haber permanecido postrada en el suelo por espacio de quince (15) minutos frente a la mirada del público curioso que ese día visitaba el referido establecimiento comercial, y que a raíz de los dolores físicos causados por la caída de referencia, debió recibir tratamiento médico consistente en medicamentos orales e inyectables. De igual forma, la realidad de la caída experimentada por Madeline en Wal-Mart, fue establecida por dos de sus empleados, los que, si bien no la vieron cuando se cayó, sí escucharon el estruendo causado por su caída y observaron cómo los clientes se arremolinaban alrededor de Madeline y acudieron al área donde ésta resbaló, y la vieron tendida en el suelo. Asimismo uno de los referidos empleados, Doris Cortés Rosado, confirmó la existencia de una substancia resbalosa en el área donde se cayó Madeline, y la limpió con papel toalla y un mapo.
Ante estos hechos no controvertidos, totalmente inmeritorio resulta el señalamiento de Wal-Mart, a los efectos de que incidió el foro de instancia al imponer la suma de $6,000 como resarcimiento por los daños físicos y angustias mentales sufridos por Madeline. Evidente nos resulta que una caída como la sufrida por Madeline, la que se debió a la negligencia de la apelante, ésta según determinada por el foro de instancia --ello con el agravante de que una góndola y los productos allí exhibidos se le vino encima a dicha parte— puede producir los daños físicos alegaídos que requirieron el tratamiento que ésta recibiera del doctor Navedo desde el día de la ocurrencia del accidente y por un período aproximado de cinco meses, hecho probado a satisfacción del foro sentenciador y que no fue controvertido por la apelante en ningún momento. Con tal inmeritorio señalamiento, la apelante parece olvidar que la doctrina sostiene que, en una acción de daños y perjuicios, es causa aquella que ordinariamente produce el resultado alegado según la experiencia general por lo que, a su amparo, la cuestión a resolver gira alrededor de la determinación de si la materialización del daño era de esperarse en el curso normal de los acontecimientos o si, por el contrario, queda fuera de ese posible cálculo. Jaime Santos Briz, supra, pág. 267. En consecuencia, no le asiste la razón a la apelante respecto a tal señalamiento de error.
De otra parte, la indemnización concedida a Madeline, la que además tomó en consideración las angustias morales y emocionales de Madeline al resbalar y caerse en el piso de Wal-MArt. de Isabela y verse tirada en el piso rodeada de muchas personas que como curiosos estaban allí mientras ella sufría "fuertes dolores físicos", así como por haber tenido que ser "cargada en un sillón de ruedas todo ello delante de bastante público que estaba en la [tjienda de compras", no nos resulta exageradamente alta ni ridiculamente baja. De otrá parte, es norma reiterada en nuestra jurisdicción que no se requiere probar daños con absoluta certeza, al punto que excluya toda otra posibilidad o probabilidad. Murcelo v. H.J. Hettinger, 92 D.P.R. 411, 426 (1965). A tenor, y según indicado, ninguna razón meritoria se aduce que justifique nuestra intervención con la determinación y discreción ejercitada por el foro de instancia al adjudicar y valorar los daños físicos y los sufrimientos , y angustias mentales resultantes de la caída sufrida por Madeline.
-C-
Réstanos considerar el último error imputado por la apelante al foro de instancia, mediante el cual se cuestiona la imposición de honorarios de abogado a la apelante WalMart. La Regla 44.1(d) de las de Procedimiento Civil establece que cuando "cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el Tribunal entienda correspondan a tal conducta". 32 L.P.R.A. Ap. III, R. 44.1. Surge de esta disposición que es discrecional la imposición de honorarios de abogado. Miranda v. ELA, 137 D.P.R. _ (1994), 94 J.T.S. 152, pág. 528; Ramírez v. Club Cala de Palmas, 123 D.P.R. 339, 349 (1989); Fernández v. San Juan Cement, Inc., 118 D.P.R. 713, 717 (1987). Ahora bien, cuando el tribunal determina que una parte ha procedido con temeridad o frivolidad, éste "deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado". Fernández, supra, pág. 717. Se interesa sancionar al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajos e inconvenientes de un pleito. Corpak v. Art. Printing y Ramallo Brothers, 125 D.P.R. 734 (1990); Fernández, supra.
*824 En el caso que nos ocupa, el tribunal de instancia concluyó que "dada la temeridad de la parte demandada [Wal-Mart]", ésta debía responderle a la demandante por la suma de $2,000.00 en concepto de honorarios de abogado. Al aplicar la anterior normativa a la luz de la totalidad de las circunstancias que concurren en el caso de autos según surge del expediente ante nos, concluimos que no abusó de su discreción dicho foro en su determinación de que la apelante actuó con temeridad al litigar el mismo. En primer lugar Wal-Mart, negó en su contestación a la demanda, por una alegada falta de información, la ocurrencia misma de la caída sufrida por Madeline en su tienda de Isabela y la existencia de la substancia en la que ésta resbalara, hechos incontrovertidos que sus propios testigos corroboraron posteriormente. Ello hace patente su temeridad. En segundo lugar, tampoco habremos de intervenir con la cuantía determinada por tal concepto. Basta con señalar que si bien la partida de honorarios de abogado es revisable en apelación, un tribunal apelativo sólo podrá variarla si la misma es excesiva, exigua o constituye un abuso de discreción. Ramírez v. Club Cala de Palmas, supra, pág. 350: Corpak v. Art. Printing, supra, pág. 350. En el caso que nos ocupa, considerada la naturaleza del litigio, el tiempo invertido, los esfuerzos y actividades profesionales desplegadas y su conducta durante el litigio, la apelante no ha demostrado que la partida de honorarios de abogado concedida sea excesiva o constituya un abuso de discreción. Concluimos así que tampoco se cometió este último error imputado.
IV
Por los fundamentos antes expuestos, se dicta sentencia confirmatoria de la apelada.
Lo acuerda y manda el Tribunal y así lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General