EMILIO NEVÁREZ, ETC., demandantes y recurridos, *v.* MUNICIPIO DE VEGA ALTA, demandado y recurrente.

*Número:* R-66-399 *Resuelto:* 25 de enero de 1973

*J. B. Fernández Badillo, Procurador General, Gilberto Gierbolini, Procurador General, Ida Cardona Hernández, y Magda E. Haydar de Martí, Procuradoras Generales Auxiliares,* abogadas del recurrente; *Ángel Manuel Ciordia,* abogado de los recurridos.

PER CURIAM: Por los fundamentos relacionados más adelante concluimos que debe revocarse la sentencia en este caso que responsabilizó al recurrente por los daños ocasionados a la entonces niña Vilma Nevárez con motivo de la caída de un poste del alumbrado de la plaza de la recurrente.[1]

---

[1] Las dilaciones en el procesamiento de este caso son tan inusitadas que resulta necesario relacionarlas con el propósito de que en lo sucesivo *no sólo se eviten sino, más bien, que no se permitan por acción positiva de los abogados de los litigantes,* y de los tribunales en aquellos extremos al alcance de sus atribuciones. Aunque el accidente ocurrió el primero de julio de 1952 no es hasta el 16 de diciembre de 1960 que se radica la demanda de daños y perjuicios en contra del municipio. El juicio se comenzó a ver *seis* años más tarde, en 22 de agosto de 1966. Las conclusiones de

Los hechos del caso son sencillos. Aparecen relacionados en las conclusiones de hecho así:

"1—El primero de julio de 1952 un grupo de niños y niñas de corta edad, a eso de las 7:30 de la noche, practicaban en la Plaza de Recreo de Vega Alta, un juego conocido como 'la cebollita'. Este juego consistía en formar una fila de niños que se agarraban por la cintura, mientras el primero de la fila se agarraba de un poste ornamental del alumbrado del Parque de Recreo. Luego, uno de los niños halaba al último de la fila para ver de lograr desprenderlo de la fila.

2—El poste en cuestión, era uno, como se dijo, ornamental, de una altura de 15 pies aproximadamente; toda su estructura era de metal, con una base metálica también de mayor anchura. En el tope tenía un foco esférico.

3—El poste en cuestión cedió lentamente al halón que le daba la fila de niños y se vino al piso. Al caer alcanzó a la demandante Vilma Nevárez, una niñita entonces de 8 años de edad. La niña quedó inconsciente, fue llevada sangrando de una herida en la frente y otra en el hombro derecho al Hospital Municipal de ese pueblo, de donde fue trasladada al Hospital de Distrito de Bayamón. En el Hospital de Distrito de Bayamón estuvo recluida por espacio de 8 días bajo observación. Allí le hicieron seis puntos de sutura en la herida del hombro y uno en la herida de la frente. Hoy día tiene una cicatriz muy pequeña en la frente de aproximadamente un centímetro y en la región escapular, o sea, en el hombro hacia la espalda tiene una cicatriz de aproximadamente $2\frac{1}{2}''$ de largo y como $\frac{1}{2}''$ de anchura, con tejido levantado. En el Hospital de Distrito estuvo bajo observación esta niña, porque se temía una laceración en el pulmón izquierdo ya que la herida en la escápula tenía alguna apariencia de enfisema del tejido subcutáneo. No pudo comprobarse plenamente la existencia de tal enfisema. También estuvo bajo observación y tratamiento por temerse la ocurrencia de una concusión cerebral. Mientras estaba hospitalizada esta niña, el día 3 de julio de 1952, durante la noche, tuvo un episodio de vómitos y las pupilas

hecho y de derecho y la sentencia se dictaron en 4 de noviembre de 1966, es decir, con encomiable prontitud. En 4 de enero de 1967 concedimos término a la recurrente para la transcripción. Esta no se terminó y radicó hasta el *17 de marzo de 1972*, o sea cinco años después, a pesar de que sólo se trata de una transcripción de 58 páginas.

dilatadas, apareciendo la paciente como adormilada. Este episodio terminó sin consecuencias específicas. El mismo pudo deberse a un edema cerebral resultante del golpe recibido, pero no hay constancia pericial de este hecho. Los tratamientos a que fue sometida la niña en el hospital fueron dolorosos; sin embargo fue dada de bajo al noveno día de hospitalización en buen estado y no tuvo que recibir tratamiento adicional.

. . . . . . . . .

6—El poste ornamental a que se ha hecho referencia en la determinación de hechos, se encontraba en mal estado. Puede hacerse esta inferencia por el hecho de que cediera ante el halón de un grupo de niños de alrededor de 13 años. Este halón no pudo ser más fuerte de lo que era capaz de soportar los brazos del único niño que se asía al poste.

7—El poste causante del accidente, así como el lugar donde jugaban los niños pertenencía y estaba bajo el control y administración del municipio demandado.

8—La niña Vilma Nevárez no estaba participando del juego de 'la cebollita' cuando ocurrió el accidente; ella se encontraba sentado en un banco cercano. Cuando se dio cuenta que el poste se venía, salió corriendo, pero siempre una parte de la estructura superior del poste la alcanzó en el hombro derecho y algunos vidrios del farol le produjeron la laceración en la frente y en el cuero cabelludo.

9—Se estiman los daños y perjucios, en términos generales, sufridos por la demandante en este caso, compensables en una suma de $7,000.00 por concepto de indemnización.

10—Los postes del alumbrado en la Plaza o Parque de Recreo, donde aconteció el accidente a que se refiere esta demanda, fueron cambiados por postes nuevos de aluminio, poco después del accidente en cuestión."

Apunta el Procurador General que el tribunal de instancia incidió al concluir que el referido municipio incurrió en negligencia. Tiene razón.

El tribunal declaró al municipio incurso en negligencia porque (1) el tribunal hizo la inferencia de que el poste ornamental se encontraba en mal estado por el mero hecho de que cedió y se cayó mientras los niños jugaban, unos tratando de

separar a otros asidos en cadena al más fuerte a su vez asido al poste y (2) porque poco después del accidente los postes de la referida plaza fueron cambiados. No se adujo prueba alguna de falta de cuidado del poste o de que el municipio tuviese conocimiento de que alguno de tales postes, y el que se cayó en particular, estuviese en mal estado, a pesar de que se presentó al tribunal el poste que se cayó. El interrogatorio por el juez de instancia del testigo que lo identificó fue el siguiente:

"P—Ese poste al caerse arrancó la base o se partió donde aparece ahí?

R—Se partió ahí.

P—Entonces la base se quedó empotrada?

R—Se cayó con todo.

P—Pero por dónde partió el poste?

R—Se partió aquí.

P—Entonces se quedó la base allí.

R—Sí, señor, se partió por ahí.

P—Entonces partió donde termina ahí?

R—Sí, señor.

P—Ese que está ante nosotros se quedó allí en la forma original en que estaba?

R—No, se cayó todo.

P—Entonces se partió o se cayó?

R—Cuando cayó se partió el tubo también.

P—El tubo quedó separado de esa parte?

R—Sí, señor, la base cayó así y al caer así se partió el tubo."

No hubo prueba pericial o de otros testigos de porqué se partió dicho poste a no ser por la acción de los niños.

■ Es posible que el juez de instancia aplicara, sin así decirlo, la doctrina *res ipsa loquitur*. Dicha doctrina no es de aplicación en este caso, pues de la prueba no puede sostenerse que el accidente no hubiera ocurrido a no ser por la negligencia de los agentes o empleados de la recurrente.

■ Tampoco procede aplicar a las circunstancias de este caso la responsabilidad estricta impuesta a los municipios en

relación con columpios y otros artefactos que usualmente se instalan en los parques para el uso y deleite de los niños. (²) Los postes del alumbrado no se instalaron para el entretenimiento de los niños. El hecho de que éstos los usaran con ese fin no puede imponer mayor obligación al municipio que la que usual y corrientemente tendría.

 Tampoco es de aplicación a las circunstancias de este caso la norma que obliga al dueño de una propiedad a tomar precauciones razonables para proteger a sus invitados. No pueden clasificarse los referidos niños, que realizaban el juego de la "cebollita" como invitados del municipio para ese fin. No hubo prueba de que el municipio, mediante la inspección de los postes, hubiera descubierto condiciones peligrosas en los mismos, o de que pudo anticipar algún peligro en los postes para sus invitados que eran los concurrentes a la plaza. La prueba indica que a no ser por el halón que los niños le dieron al poste, éste no hubiese caído y la niña no hubiese sufrido las lesiones que la caída del poste le ocasionó.

Por los fundamentos expuestos, *se revocará la sentencia dictada en este caso por el Tribunal Superior, Sala de Bayamón, en 4 de noviembre de 1966.*

---

(²) *Silverstein* v. *Camp David, Inc.,* 59 N.Y.S.2d 6 (1945) ; *Rouillard* v. *Canadian Klondike Club,* 54 N.E.2d 680 (Mass. 1944) ; *Edwards* v. *City of San Diego,* 14 P.2d 119 (Dist. Ct. of App. Cal. 1932).