EDILBERTO TORRES, ETC., ET AL., demandantes y recurridos, *v.* DR. FRANCISCO RIVERA LIZARDI, DR. HERMINIO ALVAREZ DÍAZ y HOSPITAL SAN RAFAEL, demandados y recurrentes.

*Números:* R-78-432, R-78-436    *Resueltos:* 27 de junio de 1979

*Angel R. de Corral Juliá,* abogado del recurrente Dr. Francisco Rivera Lizardi y *Guillermo Silva Janer,* abogado del recurrente Dr. Herminio Alvarez Díaz; *Rafael S. Fuentes Rivera,* abogado de los recurridos.

PER CURIAM: Los hechos de este caso son tan claros, la relación causal entre parte de esos hechos y el daño

infligido es tan directa, el control del agente o instrumento que causó el daño estaba tan totalmente en manos de los demandados, la completa ignorancia e indefensión de la niña perjudicada era tan total y la inescapable conclusión de que si hubiese habido la diligencia y cuidado mínimo que es de esperar en tales situaciones no se hubiese causado el daño, hacen de este caso prácticamente uno de *res ipsa loquitur*.

Este es un caso tan claro como el célebre caso original que inició la conocida teoría o doctrina de responsabilidad civil de *res ipsa*, en el cual, como se recordará, un barril se cayó de un segundo piso y estropeó a una persona que transitaba en esos momentos por la calle. *Byrne* v. *Boadle*, 2 H. & C. 722, 159 Eng. Rep. 299 (1863).

A la perjudicada, una niña recién nacida, se le estaba practicando un cambio de sangre. Para tales fines la niña fue colocada dentro de una bandeja o azafate de plástico que se fabrica para esos y otros propósitos y en el cual hay, en bajo relieve, construida la figura de un niño. Allí se coloca al pequeño paciente y se le amarra para que no se mueva mientras los facultativos llevan a cabo la operación o tratamiento pertinente.

En este caso, para mantener a la paciente a una temperatura cálida le colocaron debajo de la bandeja o azafate plástico una almohadilla eléctrica de calefacción que estaba enchufada mediante un alambre eléctrico a un receptáculo suplidor de corriente eléctrica. Desde luego, la intensidad del calor y la duración del mismo deben ser las apropiadas para mantener al paciente lo más confortable posible pero no para perjudicarlo.

En este caso los dos médicos demandados y la enfermera no estuvieron conscientes de esas limitaciones y el resultado fue que la paciente sufrió quemaduras graves, de tercer grado, en sus nalgas. Las fotografías demuestran que las nalgas de la paciente quedaron achicharradas y de color oscuro, exactamente como queda la carne quemada.

Las fotografías posteriores, luego de la penosa curación de dichas quemaduras, demuestran las nalgas de la niña con enormes cicatrices rojas y la piel deformada. Durante la operación el bebé lloraba y, según la prueba aportada por la enfermera, uno de los facultativos estimó que se debía a deficiencia de calcio y le administró una inyección de dicha sustancia. Dicho tratamiento no detuvo el llanto de la paciente.

La enfermera declaró que notó que la niña estaba caliente y rojiza y solicitó permiso para retirar la almohadilla de calefacción, el cual obtuvo y la retiró.

Los facultativos recurrentes alegan que no conocían de la existencia de la almohadilla. Esto no nos parece muy probable, pero de ser cierto, debieron haberlo sabido. Debió ser un indicio digno de investigación el hecho de que la niña estaba caliente y rojiza, según declaró la enfermera.

El tribunal de instancia valoró modestamente los daños causados a la perjudicada en $40,000 y en $5,000 para cada uno de los padres. También concedió $2,000 por concepto de honorarios de abogado y las costas. Ante la situación de hechos de este caso no vemos razón alguna para intervenir en las conclusiones de hecho del tribunal de instancia ni con su estimación de los daños. Recurrieron ante nos los dos facultativos pero no el hospital demandado.

*Se confirmará la sentencia recurrida y la responsabilidad solidaria de todos los demandados.*