GUILLERMO COTTO GUADALUPE y OTRA, demandantes y recurridos, *v.* CONSOLIDATED MUTUAL INSURANCE CO., demandado y recurrente.

*Número:* R-84-219 *Resuelto:* 8 de noviembre de 1985

*Carlos M. Rivera Vicente* y *Carlos E. Ríos Moreu,* de *Cancio, Nadal y Rivera,* abogados de la recurrente; *Federico A. Cordero,* abogado de la parte recurrida.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

La demanda que originalmente se radicara en el presente caso expresa, en lo pertinente al punto en controversia, (¹) que el "23 de diciembre de 1967, a eso de las 4:30 P.M. los esposos Guillermo Cotto Guadalupe y Luz Esther Román de Cotto [los cuales componían la parte demandante, junto a la sociedad legal de gananciales compuesta por ambos] se encontraban de compras *en el primer piso* de la tienda New York Department Stores, sita en la Avenida Ponce de León, parada 17, Santurce, Puerto Rico. Mientras *caminaban en dirección hacia la escalera* que va hacia el sótano de dicho establecimiento, la señora Luz Esther Román de Cotto *resbaló* cayendo por la escalera" y que el "accidente se debió a la *negligencia* de la tienda New York Department Stores *al no tomar las precauciones necesarias para evitar que el piso de dicho establecimiento estuviese resbaloso".* (Énfasis suplido.) (²)

En la sentencia que emitiera el Tribunal Superior de Puerto Rico, Sala de Caguas, el referido foro expresó que "[b]ásicamente la problemática [*sic*] consiste en determinar si New York Department Store [*sic*] fue negligente y si existe

---

(¹) Si el accidente que dio lugar a la demanda —la caída sufrida por la codemandante Luz Esther Román de Cotto— se debió a la negligencia de la parte demandada.

(²) Véanse párrafos primero y segundo de la demanda originalmente radicada.

Es pertinente señalar que posteriormente —luego de morir la codemandante Román de Cotto en el año 1970 a causa de un fallo renal secundario a la enfermedad conocida como *lupus eritematosus*— se radicó una demanda enmendada en la cual se alegó que la citada enfermedad fue consecuencia, a su vez, de la caída sufrida por la mencionada dama en el 1967.

una relación o conexión razonable entre el desarrollo de la enfermedad y el accidente". Ambas interrogantes fueron "contestadas" en la afirmativa por el tribunal de instancia, declarando, en su consecuencia, con lugar la demanda radicada.

En lo concerniente a la primera de dichas interrogantes, el referido foro así lo hizo mediante una determinación de hecho confeccionada en términos generales, prácticamente copiando literalmente las alegaciones formuladas por la parte demandante en los párrafos primero y segundo de la demanda que anteriormente reseñáramos. (3)

Inconforme con la sentencia dictada, la parte demandada acudió en revisión ante este Tribunal. Mediante resolución de fecha 14 de junio de 1984 ordenamos, a los fines de evaluar el recurso presentado, la preparación de una exposición narrativa de la prueba. Examinada la misma, mediante resolución de fecha 11 de octubre de 1984, le concedimos término a la parte demandante y recurrida para que mostrara causa por la cual no debíamos revocar la sentencia dictada por el tribunal de instancia "en vista de que la determinación de dicho foro a los efectos de que la caída sufrida . . . se debió a la negligen-

_____

(3) A esos efectos —en la determinación de hecho número dos (2)— expresó el tribunal de instancia que:

"La víspera de Nochebuena, el 23 de diciembre de 1967, a eso de las 4:30 P.M., los esposos Guillermo Cotto Guadalupe y Luz Esther Román de Cotto se encontraban de compras en el primer piso de la tienda New York Department Stores, sita en la Avenida Ponce de León, Parada 17, Santurce, Puerto Rico. Mientras caminaban en dirección hacia la escalera que va hacia el sótano de dicho establecimiento, la señora Luz Esther Román de Cotto resbaló cayendo de espaldas por diez escalones de dicha escalera. El accidente se debió a la negligencia de la tienda New York Department Stores al no tomar las precauciones necesarias para evitar que el piso de dicho establecimiento estuviese resbaloso."

En lo referente a la segunda interrogante, el foro de instancia —reconociendo que la enfermedad conocida como *lupus eritematosus* es una condición latente en el organismo de una persona debido a una anormalidad inmunológica y que las autoridades médicas estiman que el desarrollo de la misma puede deberse a cinco factores precipitantes— concluyó que quedó demostrada "una conexión razonable entre la negligencia de la New York Department Stores y el daño sufrido por Luz Esther Román de Cotto . . .".

cia de la parte demandada no encuentra apoyo en la evidencia que desfilara ante dicho Tribunal". La parte recurrida ha comparecido; estando en condiciones de resolver el recurso, procedemos a así hacerlo.

I

La "prueba" que tuvo ante sí el tribunal de instancia en lo relativo *a la ocurrencia del accidente* consistió en una deposición que se le tomara a la codemandante Luz Esther Román de Cotto en la etapa de descubrimento de prueba y de una contestación a interrogatorios suscrita por la referida codemandante [4] y el testimonio que prestara en el acto del juicio el esposo de la citada codemandante, el a su vez codemandante Guillermo Cotto Guadalupe.

Al ser ordenada por este Tribunal la preparación de una exposición narrativa de la prueba, las partes *estipularon* que la misma [5] consistiría de la antes mencionada deposición y contestación a interrogatorios y, en vista de que no fue posible realizar la transcripción del testimonio del codemandante Cotto Guadalupe, de la "transcripción" de las notas que el juez de instancia tomara del mencionado testimonio.

Un examen detenido y objetivo de la referida "exposición narrativa" nos convence de que procede resolver conforme lo intimado en la orden de mostrar causa que expidiéramos. Veamos por qué:

En la *contestación a interrogatorios* que ofreciera la codemandante Román de Cotto sobre la ocurrencia del accidente sufrido por ella se expresa, en lo pertinente, que el

sábado 23 de diciembre de 1967 me encontraba en la tienda New York Department Store en la parada 17½ en Santurce acompañando a mi esposo, Guillermo Cotto Guadalupe y mi

---

[4] Ello debido a que, como expresáramos anteriormente, la codemandante Román de Cotto falleció con anterioridad a la fecha en que se celebró la vista en su fondo del caso.

[5] En lo relativo a la forma y manera en que ocurrió el accidente.

cuñada Gladys Matos Ramos. *Mientras caminábamos en dirección de la escalera* que va hacia el sótano de dicho establecimiento *resbalé poco antes de llegar a ella y me caí por la misma.* (Énfasis suplido.) ([6])

De la *deposición* que se le tomara a la referida codemandante surge lo siguiente:

A– En cuanto a *por qué* o en qué resbaló:

P. Usted puede decirnos, *¿en qué resbaló?*

R. *Yo no sé, yo resbalé en el piso en algo* y al resbalar perdí el equilibrio. . . .

P. Debemos entender entonces *que usted no vio nada en lo que resbaló. Usted sí sabe que resbaló.*

R. Sí, señor.

P. *¿Usted vio algo en lo que resbaló?*

R. *No.* (Énfasis suplido.) ([7])

B– En cuanto a dónde resbaló:

P. Digamos, Doña Luz, usted ya testificó en el sentido de que había resbalado. Ahora, le pregunto, *¿dónde usted resbaló en relación con esa escalera?*

R. *En el primer piso yo resbalé.*

P. ¿Entonces quiere decir que usted resbaló en la escalera o antes de la escalera?

R. *Antes de bajar las escaleras.*

P. ¿Usted no resbaló en la escalera o sí resbaló en la escalera?

R. *No, señor; yo no resbalé en las escaleras, yo resbalé en el primer piso.* (Énfasis suplido.) ([8])

Por último, tenemos que el testimonio prestado durante el juicio por el codemandante Cotto Guadalupe —según ello surge de las notas tomadas por el juez de instancia— no aporta información adicional alguna respecto a la causa o razón del "resbalón" que sufriera su esposa.

---

([6]) Véase contestación a pregunta número cuatro (4) del interrogatorio.

([7]) Véase la pág. 5 de la deposición.

([8]) Véase la pág. 12 de la deposición.

## II

 No hay duda de que una persona o empresa que opera un establecimiento abierto al público con el objeto de llevar a cabo operaciones comerciales para su propio beneficio debe hacer lo posible por mantener dicho establecimiento en condiciones tales de seguridad que los clientes que patrocinan el mismo no sufran ningún daño; en otras palabras, corresponde al dueño de un negocio o al propietario del mismo mantener el área a la que tienen acceso sus clientes como un sitio seguro. A esos efectos, véanse *Gutiérrez* v. *Bahr,* 78 D.P.R. 473 (1955); *Goose* v. *Hilton Hotels,* 79 D.P.R. 523 (1956); *Santaella Negrón* v. *Licari,* 83 D.P.R. 887 (1961); *Weber* v. *Mejías,* 85 D.P.R. 76 (1962), y *Aponte Betancourt* v. *Meléndez,* 87 D.P.R. 652 (1963). Deberá observarse, sin embargo, que —como expresáramos en *Goose* v. *Hilton Hotels,* supra, págs. 527–528— el dueño del establecimiento "no es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección" y que el visitante tiene que probar que el dueño del establecimiento no "ha ejercido el cuidado debido para que el local sea seguro para él".[9] En los casos antes citados impusimos responsabilidad por cuanto los mismos envolvían *condiciones peligrosas existentes* dentro de los establecimientos correspondientes, las cuales eran *de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos.*

 Sabido es que, como regla general, le corresponde a la parte actora en un caso de daños y perjuicios donde alegue

---

[9] En igual sentido se expresa Brau: "no se trata de responsabilidad absoluta o de que los dueños de los establecimientos sean aseguradores de los daños que sufran sus clientes y parroquianos. Para que se imponga responsabilidad *es indispensable probar* que el dueño del negocio o el propietario del edificio, en su caso, *incurrió en un acto negligente* que causó o contribuyó a los daños sufridos por el perjudicado". (Énfasis suplido.) H. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico,* San Juan, Pubs. J.T.S., Inc., 1980, Vol. 2, Cap. 12, pág. 64.

haber sufrido daños como consecuencia de la negligencia de la parte demandada el peso de la prueba respecto a dicha alegada negligencia. *Vaquería Garrochales, Inc.* v. *A.P.P.R.*, 106 D.P.R. 799 (1978); *Irizarry* v. *A.F.F.*, 93 D.P.R. 416 (1966); *Morales Mejías* v. *Met. Pack. & Ware. Co.*, 86 D.P.R. 3 (1962). En palabras más sencillas, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos.

■ Un análisis de nuestra jurisprudencia referente a la situación específica de *reclamaciones por caídas* revela que hemos exigido de la parte demandante que pruebe, como parte esencial de la causa de acción que ejercita, la existencia de la condición de peligrosidad que ocasionó la caída. Véanse: *Malavé* v. *Hosp. de la Concepción*, 100 D.P.R. 55 (1971); *González Ivankovitch* v. *Las Amer. Prof. Ctr.*, 103 D.P.R. 89 (1974); *Maldonado* v. *Interamerican University*, 104 D.P.R. 420 (1975); *Weber* v. *Mejías*, supra; *Feliciano* v. *Escuela de Enfermeras*, 94 D.P.R. 535 (1967); *Torres* v. *Metropolitan School*, 91 D.P.R. 1 (1964); *Ferro* v. *A.M.A.*, 91 D.P.R. 770 (1965), y *Goose* v. *Hilton Hotels*, supra. [10]

---

[10] En *Malavé* v. *Hosp. de la Concepción*, 100 D.P.R. 55 (1971), se desestimó la demanda por no probarse que las escaleras estuvieran mojadas; *González Ivankovitch* v. *Las Amer. Prof. Ctr.*, 103 D.P.R. 89, 91 (1974), se desestimó la demanda por no considerarse una cadena como suficiente para constituir "una condición peligrosa"; *Maldonado* v. *Interamerican University*, 104 D.P.R. 420 (1975), se probó que el piso de unas escaleras estaba completamente pulido, era resbaladizo y esa situación se agravaba al caer la lluvia por una ventana rota, además de ser el alumbrado inadecuado; *Weber* v. *Mejías*, 85 D.P.R. 76 (1962), se probó que se trataba de una superficie pulida que propendía a ser resbaladiza cuando se mojaba por efecto de las lluvias; *Feliciano* v. *Escuela de Enfermeras*, 94 D.P.R. 535 (1967), se probó que el piso era liso y resbaloso aun cuando estuviera seco; *Torres* v. *Metropolitan School*, 91 D.P.R. 1 (1964), se desestimó la demanda por no considerarse que escaleras de loseta y con un solo pasamanos fuera condición peligrosa; *Ferro* v. *A.M.A.*, 91 D.P.R. 770 (1965), se desestimó la demanda por no haberse probado que los escalones de una guagua estuvieran lisos ni considerarse que la falta de alfombra de goma fuera condición peligrosa; *Goose* v. *Hilton Hotels*, 79 D.P.R. 523 (1956), se probó que

## III

En el presente caso —según podemos concluir de la relación que de los hechos realizáramos— el tribunal de instancia no tuvo ante sí prueba alguna de dónde, ni tan siquiera, se pueda inferir que en el establecimiento en controversia existía una condición peligrosa; mucho menos, por lo tanto, prueba de que los demandados pudieran tener conocimiento de ella. La única prueba presentada por la parte demandante en el descargo de la antes mencionada obligación fue el hecho de que la codemandante Román de Cotto resbaló "en algo" mientras caminaba en dirección a unas escaleras, como consecuencia de lo cual cayó al piso. Somos del criterio que ese hecho —incontrovertido, pero escueto— por sí solo no es suficiente para imponerle responsabilidad a la parte demandada. ([11]) *Malavé* v. *Hosp. de la Concepción*, supra; *González Ivankovitch* v. *Las Amer. Prof. Ctr.*, supra. ([12])

Por último, estimamos que no es de aplicación a los hechos del presente caso la doctrina de *res ipsa loquitur* ya

___

los escalones eran estrechos, generalmente estaban mojados, había un solo pasamanos y había una franja de tres pulgadas de cemento liso al final de cada escalón.

([11]) La conclusión a la que llegamos no se ve afectada por razón de que, según ello surge de la certificación a esos efectos expedida por el juez de instancia, el codemandante Cotto Guadalupe declarara durante el juicio que observó que de un conducto de aire acondicionado caían gotas de agua. En primer lugar, el tribunal de instancia no le dio importancia alguna a ese hecho; prueba de lo anteriormente expresado es que ello no fue objeto de determinación de hecho alguna en la sentencia que emitiera. En segundo lugar, esa prueba no es suficiente para imputarle negligencia a la parte demandada. Baste señalar que no se establece relación causal —ni aun por inferencia— entre ese hecho y la caída sufrida por la codemandante Román de Cotto.

([12]) Al presente caso no le es de aplicación ninguna de las teorías de responsabilidad absoluta; no le es de aplicación la teoría del riesgo o responsabilidad sin culpa ya que aun cuando se trata de una actividad con fines de lucro, no se trata de una actividad inherentemente peligrosa o arriesgada. Véase *Martínez* v. *Chase Manhattan Bank*, 108 D.P.R. 515 (1979). Tampoco es de aplicación la teoría de garantía implícita ya que no se alega que los daños sean el resultado del uso de un producto de la demandada. Véase *Montero Saldaña* v. *Amer. Motors Corp.*, 107 D.P.R. 452 (1978).

que, entre otras razones, la caída sufrida por la demandante no necesariamente, y de ordinario, tiene que haberse debido a "condiciones peligrosas existentes" dentro del referido establecimiento o debido a "alguna clase de negligencia imputable a la parte demandada"; [13] en otras palabras, una persona mientras camina puede resbalar y caerse al piso sin que medie negligencia de persona alguna. [14]

Por las razones antes expuestas, [15] *se expide el auto y se dicta sentencia revocatoria de la dictada por el Tribunal Superior de Puerto Rico, Sala de Caguas, en el Caso Civil Núm. 68-1584.*

El Juez Asociado Señor Irizarry Yunqué disiente sin opinión.

---

[13] Sobre los requisitos exigidos por la jurisprudencia para la aplicación de la doctrina de *res ipsa loquitur*, véanse: *Torres* v. *Rivera Lizardi*, 108 D.P.R. 829 (1979); *Pérez Rivera* v. *Olazagasti Fiol*, 90 D.P.R. 779 (1964); *Castro* v. *Municipio de Guánica*, 87 D.P.R. 725 (1963); *Vda. de López* v. *García Espinosa*, 86 D.P.R. 702 (1962).

[14] En *Nevárez* v. *Municipio de Vega Alta*, 101 D.P.R. 70 (1973), expresamos: "Dicha doctrina no es de aplicación en este caso, pues de la prueba no puede sostenerse que el accidente no hubiera ocurrido a no ser por la negligencia de los agentes o empleados de la recurrente." Pág. 74. Allí encontramos que era muy posible que el accidente se debiera a hechos en nada relacionados a conducta negligente por parte del demandado, por lo que sería inaplicable la doctrina de *res ipsa loquitur* y por lo que el demandante debía probar específicamente la causa del accidente.

[15] Los fundamentos expuestos hacen innnecesario el que nos expresemos sobre la determinación de relación causal que hiciera el foro de instan-

cia entre la caída sufrida por la codemandante Román de Cotto y el desarrollo de la enfermedad de *lupus eritematosus* que finalmente le causara la muerte; determinación que, cuando menos, resulta altamente cuestionable.