TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos Wal-Mart Puerto Rico Inc. h/n/c Supermercados Amigo (Walt-Mart) mediante recurso de apelación presentado el 8 de junio de 2006. Solicita la revocación de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de.Bayamón (TPI), el 12 de abril de 2006, notificada y archivada en autos el 25 de abril de 2006. Dicho foro declaró “con lugar” la demanda sobre daños y perjuicios presentada por Isabel Rosado Reyes (Rosado). Además, condenó a Wal-Mart a pagar veinte mil dólares ($20,000) por los daños físicos, sufrimientos y angustias mentales sufridos por Rosado, más las costas.
I
El 28 de agosto de 2003, Rosado, quien en esa fecha tenía ochenta (80) años de edad, presentó demanda sobre daños y perjuicios en contra de Supermercados Amigo de Santa Juanita, ACE Insurance Company [1] y John Doe. En la misma, alegó que el 18 de mayo de 2003, como a eso de las 11:45 a.m. se encontraba caminando por uno de los pasillos del establecimiento “cuando de momento, por causa de un objeto que había en el suelo y el cual ella no vio, cayó al suelo, rodó con las manos y luego de espaldas”. Explicó que se quedó un rato en el suelo, por que estaba aturdida, y luego se levantó y se fue. Alegadamente, los empleados del supermercado la observaron en el piso, pero no hicieron nada. A consecuencia del accidente, Rosado adujo que sufrió múltiples golpes y contusiones en ambas caderas, la rodilla izquierda, en ambos codos y dolor en la espalda que provocaron que estuviera en cama por dos (2) semanas. Según surge de la demanda, recibió tratamiento médico con un fisiatra, quien le recomendó terapia.
En virtud de lo anterior, reclamó la cantidad de sesenta mil dólares ($60,000) por los daños sufridos y doscientos veinte dólares ($220) por los gastos médicos incurridos.
Luego de varios incidentes procesales interlocutorios, el 12 de abril de 2006, notificada el 25 de abril de 2006, el TPI emitió Sentencia en la que declaró “con lugar” la demanda y condenó a Wal-Mart a pagar veinte mil dólares ($20,000) por los daños sufrido por Rosado, más las costas.
*663 El 3 de mayo de 2006, Wal-Mart presentó “Moción Solicitando Determinaciones de Hechos Adicionales”.
El 9 de mayo de 2006, notificada el 11 de mayo de 2006, el TPI emitió Orden en la que declaró “no ha lugar” la solicitud de determinaciones de hechos adicionales.
El 8 de junio de 2006, Wal-Mart presentó recurso de apelación en el que señaló la comisión de los siguientes errores:

“1. Erró el TPI al determinar que Amigo incurrió en negligencia.

2. El TPI erró al otorgar unas cuantías exageradamente altas por los daños alegadamente sufridos por la demandante y al otorgar angustias mentales a pesar de ésta no haber presentado evidencia en tomo a dichos daños. ”

II
El Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, impone responsabilidad al que causa daño a otro, ya sea mediante acción u omisión en la que intervenga culpa o negligencia. La culpa o negligencia es la falta del debido cuidado, que a la vez consiste esencialmente en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Ramos v. Carlo, 85 D.P.R. 353, 358-359 (1962).
Para imponer responsabilidad civil bajo el Artículo 1802, supra, es necesario que concurran tres requisitos o elementos, a saber: (1) que se establezca la realidad del daño sufrido; (2) que exista la correspondiente relación causal entre el daño y la acción u omisión de otra persona; y (3) que dicho acto u omisión sea culposo o negligente. Ramos Milano v. Wal-Mart, 168 D.P.R. _, 2006 JTS 106, a la página 1441, Opinión de 8 de junio de 2006; Santiago Colón y otros v. Supermercados Grande, 166 D.P.R. _, 2006 JTS 21, a la página 840, Opinión de 12 de enero de 2006; Tormos Arroyo v. D.I.P., 140 D.P.R. 265, 271 (1996); Elba A.B. v. Universidad de Puerto Rico, 125 D.P.R. 294, 308 (1990).
En Soc. de Gananciales v. González Padín, 117 D.P.R. 94, 106-107 (1986), nuestro Tribunal Supremo elaboró lo siguiente sobre el concepto de responsabilidad extracontractual por omisión ilícita:

...En cuanto a la responsabilidad en particular resultante de omisiones, de un análisis de las decisiones emitidas por este Tribunal a través de años se desprende que los factores a considerarse son: primero, la existencia o inexistencia de 'un deber jurídico de actuar' por parte del alegado causante del daño, el incumplimiento del cual deber constituye precisamente la 'antijuridicidad' de que hablábamos anteriormente, (citas omitidas) y segundo, si de haberse realizado el acto omitido se hubiese evitado el daño. (Citas omitidas.)”

Un elemento esencial de la responsabilidad por culpa o negligencia es el factor de la previsibilidad y el riesgo en el caso específico. Elba A.B. v. Universidad de Puerto Rico, supra, a la página 309. El deber de cuidado incluye, tanto la obligación de anticipar, como la de evitar la ocurrencia de daños, cuya probabilidad es razonablemente previsible. Pero la regla de anticipar el riesgo no se limita a que el riesgo preciso o las consecuencias exactas arrostradas debieron ser previstas. Lo esencial es que se tenga el deber de prever en forma general consecuencias de determinada clase. Id.
En relación con la responsabilidad de los dueños de establecimientos comerciales, se ha establecido que éstos tienen el deber de mantener dichos establecimientos en condiciones de seguridad tales, que la persona inducida a penetrar en los mismos, no sufra ningún daño. Ramos Milano v. Wal-Mart, supra, a la página 1442; Santiago Colón y otros v. Supermercados Grande, supra, a las páginas 839-840; Soc. de Gananciales v. *664 González Padín Co. Inc., supra, a la página 104; Cotto v. C.M. Ins. Co., 116 D.P.R. 644, 650 (1985). Este deber implica que el dueño u operador tiene el deber de ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño. Colón González v. Tienda Kmart y otros, 154 D.P.R. 510, 518-519 (2001); Soc. de Gananciales v. González Padín Co.; Inc., supra, a la página 104. Así se ha impuesto responsabilidad al operador de un establecimiento comercial en situaciones que envuelven "condiciones peligrosas existentes dentro de los establecimientos correspondientes, las cuales eran de conocimiento de los propietarios o su conocimiento podía imputárseles a éstos". Cotto v. C.M. Insurance, supra, a la pág. 650, y los casos allí citados.
No obstante lo anterior, el dueño de un establecimiento no es un asegurador absoluto de la seguridad de los clientes de su negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección. Por tanto, para que se le imponga responsabilidad al dueño del establecimiento comercial, el demandante tiene que probar que el dueño del establecimiento no ha ejercido el cuidado debido para que el local fuese seguro. Ramos Milano v. Wal-Mart, supra, a la página 1442; Santiago Colón y otros v. Supermercados Grande, supra, a la página 840; Colón González v. Tienda Kmart y otros, supra, a las páginas 518-519. En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, y que esa condición fue la que con mayor probabilidad ocasionó el daño, y que la misma era conocida por el demandado, o que debió conocerla.
III
En su escrito, Wal-Mart señaló como primer error que el TPI incidió al determinar que Supermercados Amigo había incurrido en negligencia. En apoyo de su posición, argumentó que Rosado no presentó prueba alguna que demostrara que el aviso de piso mojado constituia un riesgo irrazonable. Sostuvo que quedó probado que el aviso se colocó precisamente para evitar accidentes. Que el aviso es de un color llamativo que contrasta con el color del piso y que por su altura es claramente visible.
De otra parte, Wal-Mart planteó que Rosado no aportó evidencia que probara que hubieran ocurrido otros accidentes de manera tal que se demostrara que el aviso constituyera una condición irrazonablemente peligrosa. Por consiguiente, alegó que no se probó que Supermercados Amigo incurriera en un acto negligente que contribuyera a la caída que sufrió Rosado.
En este caso, el TPI concluyó de la prueba desfilada que Rosado iba caminando por uno de los pasillos del supermercado y cuando dobló hacía la derecha, por la mesa donde estaban ubicados los vegetales, tropezó con un “'burrito de color anaranjado", mejor conocido como “wet floor". De igual modo determinó como un hecho probado que el referido burrito era de aproximadamente de 2’ x 2’, pero estaba tan próximo a la mesa que no se podía observar a distancia y Rosado declaró que no tuvo tiempo de percatarse de su ubicación. Surge de las determinaciones de hechos formuladas por el TPI que cuando Rosado dobló hacía la derecha y dio un paso, ahí tropezó con el burrito y al evitar caer de cara, dio una vuelta y se lastimó los glúteos y ambos brazos. 
De la trascripción del juicio, surge que Rosado declaró que, al momento del accidente, se dirigía a la sección de los vegetales; por ello, entró por el pasillo principal del supermercado y caminó entre varias mesas. Cuando llegó a donde estaban ubicados algunos vegetales, dobló a la derecha en la última mesa que estaba allí localizada; dio dos pasos e inmediatamente tropezó con el aviso de “wet floor", se enredó y cayó al piso. Además, surge del testimonio de Rosado que no observó nada que indicara que dicho aviso estaba colocado en ese lugar, o sea, tan pegado a la mesa. 
Por otro lado, durante el juicio declaró Sandra Bonet Torres (Bonet), quien era la Gerente del Supermercado Amigo de Santa Juanita cuando ocurrieron los hechos. Ella declaró que el aviso de “wet floor” era un cono de unos dos pies de alto, color anaranjado, que se colocaba antes de donde estaba el área mojada para evitar que una persona se cayera. En cuanto al accidente que tuvo Rosado, Bonet leyó parte del informe que preparó el día *665 de los hechos, el cual decía La cliente tropezó con el ‘wet floor’ de la tienda que se encontraba al lado de la nevera de frutas picadas. Aparentemente, ella no lo vio y tropezó con el piso... con él. El piso no estaba mojado. ” 
Los hechos en el presente caso, nos llevan a concluir que el accidente que sufrió Rosado se debió a la negligencia del Supermercado Amigo, puesto que no actuó con la precaución necesaria al colocar un aviso de “wet floor” tan próximo a una mesa de manera tal que no se podía ver con anticipación. Más aún, cuando Supermercados Amigo colocó dicho aviso sin ninguna razón porque el piso no estaba mojado.
De acuerdo a la jurisprudencia, los dueños de establecimientos comerciales tienen el deber de ejercer un cuidado razonable para evitar que sus clientes sufran algún daño. Tal y como lo determinó el foro primario, en este caso, el Supermercado Amigo incurrió en negligencia, al tener conocimiento de la ubicación del aviso de “wet floor” y no prever que sus clientes podían sufrir una caída como la que ocurrió en este caso.
Como es sabido, en ausencia de pasión, prejuicio, parcialidad o error manifiesto, los tribunales apelativos no debemos intervenir con la apreciación de la prueba de los tribunales de instancia. Rodriguez Oquendo v. Petri, 167 D.P.R. _, 2006 JTS 65, a la página 1148, Opinión de 11 de abril de 2006; Arguello López v. Arguello García, 155 D.P.R. 62, 78-79 (2001).
Un análisis de la totalidad de la prueba que tuvo ante sí el TPI, nos lleva a concluir que éste tuvo ante sí prueba suficiente para imponerle responsabilidad a Wal-Mart. Por lo tanto, no se cometió el primer error alegado.
IV
m ^omo segundo error, Wal-Mart señaló que el TPI erró al otorgar unas cuantías exageradamente altas por los daños alegadamente sufridos por Rosado y al otorgar angustias mentales a pesar de ésta no haber presentado evidencia en tomo a dichos daños.
Wal-Mart alego ante nos que no existe prueba objetiva que demuestre que las limitaciones en el diario vivir que sufre Rosado son en efecto consecuencia del accidente y no son el resultado de las condiciones pre-existentes degenerativas que sufre y de su edad. Añadió, que no se ofreció prueba médica alguna que relacionen la depresión, ansiedad y tristeza de estos síntomas con el accidente.
En el caso de autos, se presentó en evidencia el informe del fisiatra Dr. Leonel Shubb, perito de Wal-Mart, quien concluyó que:
.. Evidencia objetiva examinada a la fecha de hoy incluyendo estudios de resonancia magnética, tomografías computadorizadas del área lumbar y pruebas electrodiagnósticos arrojan solamente un diagnóstico de condición degenerativa esperada para su edad. Sin embargo, los síntomas a nivel de su cadera izquierda y el área lumbar con radiación a la pierna izquierda son sugestivos de una posible radiculopatía lumbar la cual nunca fue confirmada con las pruebas electrodiagnósticos. Se debe entender que la Sra. Rosado padece de osteoporosis, artritis y condición degenerativa del área lumbar la cual es esperada para su edad. Estas condiciones la colocarían en una categoría número dos de los diagnósticos relacionados estimados en la cual permite asignar de un cinco a un ocho por ciento de impedimento de la persona completa. Debido -a que este por ciento debe ser ajustado basado en las limitaciones en las actividades del diario vivir, se otorga un seis por ciento de impedimento de la persona completa. Sin embargo, este por ciento debe ser aporcionado debido a sus condiciones preexistentes y a su condición degenerativa lumbar. Por lo tanto, se asigna un tres por ciento con relación causal al accidente sufrido en el Supermercado Amigo... ”. 
*666 Además, se presentó en evidencia el récord médico de Physiotherapy Rehabilitación Services en el que se resume el tratamiento médico que recibió Rosado el cual consistió de treinta y dos (32) terapias. También se sometieron los récords médicos del Dr. Edwin Valentín, la Dra. Ligia Vivesy el Dr. Luis Goveo, más tres (3) fotos que demostraban los hematomas y traumas sufridos por Rosado.
Por otro lado, Rosado declaró que tenía ochenta años de edad y que había sido maestra.de escuela pública, pero una vez se retiró, se dedicó a la costura. Como consecuencia del accidente, Rosado indicó que ya no se podía dedicar a la costura, porque no podía estar sentada debido a que le dolía la espina dorsal. Añadió, que casi no podía caminar, guiar, y hacer los quehaceres del hogar, por lo que había tenido que contratar los servicios de una señora para que la ayudara. Señaló que toda esta situación de tener que depender de otros le causaba ansiedad y depresión. 
Luego de realizar su juicio valorativo, el TPI le concedió un total de veinte mil dólares ($20,000) por los daños físicos, sufrimientos y angustias mentales que sufrió Rosado.
El Tribunal Supremo ha establecido que la función de estimación y valorización de los daños físicos y mentales descansa en el juicio discrecional, sereno, prudente y razonable del juzgador de instancia. Torres Solís et al. v. A.E.E. et als., 136 D.P.R. 302, 311-312 (1994). De ordinario, los tribunales apelativos respetaremos esa decisión y no intervendremos con la valorización realizada, ya que el foro de instancia se encuentra en mejor posición para evaluar sus elementos visibles e intangibles. Rosado v. Supermercado Mr. Special, 139 D.P.R. 946, 954(1996).
La gestión judicial de estimación y valoración de daños es sumamente complicada y angustiosa porque “no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano, que permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado Urrutia v. A.A.A., 103 D.P.R. 643, 647-648 (1975).
En virtud de lo anterior, concluimos que no estamos en condiciones de sustituir la cuantía concedida por una apreciación nuestra, ausente de los elementos que lo justificarían, o sea, pasión, prejuicio o parcialidad de parte del foro de instancia. Por lo tanto, resolvemos que el segundo error no fue cometido.
V
Por los fundamentos antes expuestos, confirmamos la sentencia apelada.
Lo acordó y manda el Tribunal y lo certifica la Secretaria Interina del Tribunal.
Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal
ESCOLIOS 2007 DTA 6
1. El 20 de enero de 2004, notificada el 23 de ese mismo mes y año, el TPI emitió Sentencia Parcial en la que declaró “con lugar” la “Moción de Desistimiento Contra Parte” presentada por Rosado y en su consecuencia dio por desistida, con perjuicio, la causa acción en cuanto a ACE Insurance Company. Véase, el Apéndice del recurso a la página 10.
2. Véase las Determinaciones de Hechos Núm. 2-4 formuladas por el TPI en la Sentencia apelada al Apéndice del recurso a la página 22. '
3. Véase la Transcripción a las páginas 14-21.
*667 4. Id., a la página 41.
5. Id., a la página 44.
6. Véase el Apéndice del recurso a las páginas 31-35.
7. Véase la Transcripción a las páginas 29-31.