**Donna Callwood CLINE and Muriel Callwood, Plaintiffs**

v.

**PUERTO RICO PORTS AUTHORITY, et al., Defendants.**

**Civil No. 08–1269 (JP).**

United States District Court, D. Puerto Rico.

Oct. 22, 2008.

---

**11.** (Document no. 10).

**12.** (Document nos. 17 and 18).

Emilio E. Solé-de la Paz, Esq., Solé–De la Paz Law Office, Rafael G. Martínez–Géigel, Esq., Martínez–Géigel Law Office, San Juan, PR, for Plaintiffs.

Jaime F. Agrait–Lladó, Esq., Agrait-Lladó Law Office, San Juan, PR, for Defendants.

### OPINION AND ORDER

JAIME PIERAS, JR., Senior District Judge.

Before the Court is Defendants' motion for summary judgment (**No. 31**), and Plaintiffs' opposition thereto (No. 33). Plaintiffs Donna Callwood Cline ("Cline") and Muriel Callwood filed the instant action pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann., tit. 31, § 5141, for the alleged negligence of Defendant Puerto Rico Ports Authority ("PRPA") in the maintenance and cleaning of its premises, the Luis Muñoz Marín International Airport. Specifically, Plaintiffs allege that PRPA's failure to maintain its airport streets in a safe condition caused personal injury to Plaintiff Cline. For the reasons stated herein, Defendants' motion is hereby **GRANTED.**

### I.  MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE

The following material facts were deemed uncontested by all parties hereto at the July 11, 2008, Initial Scheduling Conference (No. 27), as modified by the Amended Initial Scheduling Conference Order (No. 30).

1.  On March 5, 2007, Plaintiff Cline arrived at the Luis Muñoz Marín

International Airport (the "Airport") in Isla Verde, Puerto Rico.

2. Plaintiff arrived at the Airport in a privately owned taxi cab.

3. Plaintiff Cline fell on a street while getting out of the taxi cab.

4. Plaintiff suffered an injury to her right ankle.

5. Plaintiff was treated at the Dr. Federico Trilla University of Puerto Rico Hospital in Carolina, Puerto Rico.

6. Plaintiff Cline was hospitalized for four days.

7. Plaintiff was diagnosed with a displaced trimalleoar dislocation in her right ankle with bone displacement. Plaintiff's injury required emergency surgery, which took place on March 6, 2007.

8. Plaintiff required surgical internal fixation of her joint with implantation of a surgical plate and surgical screws. As a result, Plaintiff remained hospitalized for four days.

9. Plaintiff has required physical therapy for her injury.

10. As a result of her injury, Plaintiff Cline has to wear a brace on the injured ankle.

11. Plaintiff was unable to work from March 6, 2007, until June 22, 2007.

12. ACE Property and Casualty Insurance company, a/k/a ACE/USA ("ACE"), is the insurance carrier for PRPA in this case, through an insurance policy subject to its terms and limitations.

13. PRPA is a public corporation with capacity to sue and be sued.

The following facts are deemed uncontested by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1. On the date of the incident at issue, Plaintiff Cline arrived at the Airport between 1:00 p.m. and 2:00 p.m.

2. Plaintiff Cline arrived at the Airport via the road for the departures terminal of the Airport.

3. The road for the departures terminal at the point where the incident took place is out in the open. Plaintiff Cline was approximately two to three feet from the sidewalk when the incident occurred.

4. Plaintiff Cline's accident happened when she took the first step out of the taxi, at which point she slipped immediately.

5. The road where Plaintiff Cline fell had a substance on it that Plaintiff Cline thought looked like oil. Plaintiff did not see the oily substance until after she fell.

6. After falling, Plaintiff Cline noticed that the oil formed a spot with a radius of approximately eight inches.

7. At the time of Plaintiff's fall, there was a lot of traffic at the area of the fall.

8. When Plaintiff Cline steps out of a car, she usually does not look down.

9. Plaintiff Cline indicated that the oil she saw was dark, and the color of the road was clear, like cement.

## II. *LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT*

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir.1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affida-

vits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Zambrana–Marrero v. Suarez–Cruz,* 172 F.3d 122, 125 (1st Cir.1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993); *Canal Ins. Co. v. Benner,* 980 F.2d 23, 25 (1st Cir.1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *See Mack v. Great Atl. and Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Goldman,* 985 F.2d at 1116.

### III. *ANALYSIS*

Defendants PRPA and ACE move the Court to enter summary judgment on their behalf because Plaintiffs fail to state a cognizable claim for which relief may be granted. The Court will now consider Defendants' argument.

■ In this action based on diversity jurisdiction, Puerto Rico tort law applies. Section 5141 of the Puerto Rico Civil Code states, in pertinent part, that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. To prevail on a negligence claim under Article 1802, a plaintiff must show that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach caused the plaintiff harm. *Id.; see also Ottimo v. Posadas de Puerto Rico Associates, Inc.,* 721 F.Supp. 1499, 1500 (D.P.R.1989).

■ The United States Court of Appeals for the First Circuit held that Section 5141 "requires, as an element, an affirmative showing by a plaintiff that the defendant was negligent." *Mas v. United States,* 984 F.2d 527, 530 (1st Cir.1993), citing *Cotto v. Consolidated Mutual Insurance Co.,* 116 D.P.R. 644, 650 (1985) (holding that a plaintiff's bare assertion that a floor was slippery was insufficient to impose liability on the commercial establishment). In turn, this showing "requires a demonstration that the defendant has either actual or constructive knowledge of a dangerous condition." *Mas,* 984 F.2d at 530. That is, a commercial establishment is liable for damages suffered by its clients due to hazardous conditions that were known or should have been known by the owner or operator of the commercial establishment. *Cotto,* 116 D.P.R. at 644.

The majority of decisions issued by the Puerto Rico Supreme Court that deal with the issue of personal injuries caused by alleged negligent facility maintenance pertain to indoor hazards. *See, e.g., Gutiérrez v. Bahr,* 78 D.P.R. 473 (1955) (finding a store owner liable for injuries caused to a shopper by a negligently maintained electric fan); *Goose v. Hilton Hotels,* 79 D.P.R. 523 (1956) (imposing liability on a hotel for failing to put a second railing in a slippery stairway near the swimming pool area). In this line of case-law, the Puerto Rico Supreme Court concluded that the owner or operator of a commercial establishment has a duty to exercise reasonable care to maintain those areas that are accessible to the public, so as to avoid injury to its patrons. *Sociedad de Gananciales v. González Padín Co.,* 117 D.P.R. 94, 104 (1986). Further, the Puerto Rico Supreme Court held that the plaintiff bears the burden of proof to establish that the commercial establishment did not exercise due care to assure the safety of the premises. *Id.*

In *Rivera Ramírez v. Supermercados Amigo, Inc.,* 106 D.P.R. 657 (1977), the Supreme Court of Puerto Rico considered the case of a plaintiff who slipped on a mango peel in defendant's supermarket parking lot, thereby suffering injury. The Supreme Court of Puerto Rico referenced its jurisprudence requiring commercial establishments to keep their indoor premises in safe condition, but then distinguished this case because the fall occurred in the parking lot, a public open area with heavy vehicle and pedestrian traffic. *Id.* at 660. The Supreme Court of Puerto Rico held that the mango peel could have been left in the parking lot without any negligence on part of the commercial establishment. *Id.* Accordingly, the plaintiff's complaint was dismissed.

As for the conditions of public streets, the Supreme Court of Puerto Rico has held that the government does not have a duty to keep streets or sidewalks in perfect conditions. *Cardenas Maxan v. Rodriguez Rodriguez,* 125 D.P.R. 702, 709 (1990). The Court further noted that it would be impossible to require that the public ways of Puerto Rico be kept in ideal conditions at all times. *Id.* This Court is not aware of any decision issued by the Supreme Court of Puerto Rico that imposes a duty for the owners of public access roads to keep them free of liquids, dust, stones, or any of the other materials that are regularly present on such roads.

■ The Court must now consider whether Plaintiff Cline has met her burden of proving that Defendant PRPA did not exercise due care to assure the safety of its Airport premises. In doing so, the Court must determine whether Defendant PRPA had actual or constructive knowledge of the slippery condition of the spot on the road where Plaintiff Cline fell and failed to correct the dangerous condition.

The parties hereto stipulated that Plaintiff Cline fell within the roadway of the departures terminal of the Airport, rather than on a sidewalk or at an internal location within the Airport. In fact, Plaintiff Cline was approximately two to three feet away from the sidewalk—and into the main roadway—when she fell. It is uncontested that there is a heavy amount of vehicular and pedestrian traffic at the location where Plaintiff Cline fell.

Plaintiff Cline has not proffered any conclusive evidence demonstrating the length of time that the slippery substance was on the road before she fell. Plaintiff Cline fell immediately upon her arrival at the airport, and only noticed the slippery substance after her fall. Plaintiff Cline has not produced any eyewitness testimony in support of her theory that the substance was on the road for an extended period of time. Rather, she testified that

the slippery substance had been sitting on the roadway for some time because it was dark in color. Plaintiff based this assertion on her knowledge of cooking oil, which turns darker when it is old. Plaintiff Cline offered no expert testimony analyzing the color of the oil to prove the length of time it was left on the roadway. As such, the Court finds Plaintiff Cline's assertion regarding the length of time that the substance was on the roadway to be unsupported.

In support of its motion for summary judgment, Defendant PRPA provided a statement under penalty of perjury from Daniel Vizcarrondo Ramos ("Vizcarrondo"), General Conservation Supervisor for Defendant PRPA at the Airport. Vizcarrondo stated that as part of his duties, he is in charge of the employees who provide cleaning and maintenance to the Airport roadways, including the departures terminal roadway where Plaintiff Cline fell. Vizcarrondo described the maintenance schedule for said area of the Airport. According to Vizcarrondo, two employees arrive at 7:30 a.m. each day to sweep and clean the streets, among other duties. Their shift lasts until approximately 4:00 p.m. At 2:30 p.m., a second team of two employees arrive to further sweep and clean the streets. These two employees work until 10:00 p.m. Vizcarrondo stated that he personally verifies that the streets are cleaned and swept three times per day: once in the morning, once in the afternoon, and once at night. After 10:30 p.m., the cleaning of the roads is done as the need arises.

Plaintiff argues that although Defendant PRPA employs a system of regular cleaning to its streets, the cleaning and maintenance process is both insufficient and superficial. In support of this argument, Plaintiffs note that in Vizcarrondo's deposition, he stated that the cleaning of the curbsides is limited to picking up discarded objects, and sweeping the curbsides and gutters.[1] The sidewalk surfaces are cleaned with pressure hoses by private corporations. Plaintiffs understand from Vizcarrondo's deposition that the streets are not cleaned with pressure hoses.

Plaintiffs argue that the superficial cleaning of the streets is insufficient to maintain safe conditions for Airport customers. Plaintiffs further argue that the oil patch should have been noticed by Defendant PRPA's street cleaning employees, who in turn should have notified their supervisor to clean the roadway. The Court disagrees. Plaintiff Cline's fall occurred on a busy portion of open roadway that is constantly used by cars, taxis, pedestrians, and buses. Plaintiffs have failed to prove to the Court that the oil patch remained on the ground for any extensive period of time. By failing to demonstrate the length of time that the oil sat on the busy roadway, Plaintiffs cannot claim that Defendant PRPA knew or should have known that the spill occurred, despite PRPA's schedule of regular maintenance.

Plaintiffs have failed to proffer any expert testimony demonstrating the inadequacy of Defendant PRPA's cleaning methods. Had Plaintiff's fall occurred on the sidewalk or within the airport, the Court's analysis might be different. However, there is simply no Puerto Rico caselaw holding that an airport is required to keep its public streets free from oily substances at all times. Without any proof of the length of time that the oily substance existed on the roadway, the Court cannot so expansively interpret the existing caselaw to require Defendant PRPA to keep its roadways in a perfectly dry condition. Therefore, the Court holds that Plaintiffs

---

1. The term "curbside" used by Plaintiffs is confusing. The Court understands it to mean the Airport roadway areas, including the area where Plaintiff Cline fell.

have failed to demonstrate that Defendant PRPA had either actual or constructive knowledge of a dangerous roadway condition, or that Defendant PRPA failed to exercise due care to keep its premises in a safe condition for its customers. Accordingly, the granting of summary judgment on Defendants' behalf is warranted.

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment is hereby granted. The Court will enter a separate judgment dismissing Plaintiffs' complaint with prejudice.

**IT IS SO ORDERED.**